**NICHOLSTONE BOOK BINDERY, INC.,**
**Plaintiff-Appellant,**

v.

**CHELSEA HOUSE PUBLISHERS, et al.,**
**Defendants-Appellees.**

Supreme Court of Tennessee,
at Nashville.

Oct. 5, 1981.

James C. Hofstetter and O. B. Hofstetter, III, Nashville, for plaintiff-appellant.

James F. Sanders, Neal & Harwell, Nashville, for defendants-appellants.

## OPINION

BROCK, Justice.

The principal question here is whether there are sufficient "minimum contacts" to confer *in personam* long-arm jurisdiction over the defendant foreign corporation which has conducted a single business transaction with the plaintiff, a Tennessee corporation.

█ Plaintiff, a Tennessee book binder, filed suit in Davidson County Chancery Court against Chelsea, a New York publishing house, alleging the defendant's failure to make payment for printing and binding done in Tennessee by plaintiff and shipped to defendant in New York. Defendant filed a Rule 12.02(2), T.R.C.P., motion to dismiss for lack of *in personam* jurisdiction. The Chancellor held a hearing on the motion, treated it as a Rule 56 motion for summary judgment, after considering affidavits presented by both parties, and sustained the motion for summary judgment.[1] The Court of Appeals affirmed, holding that the Tennessee Long-Arm Statute, T.C.A., § 20–235 (now T.C.A. § 20–2–214),[2] and the constitutional limitations of the Fourteenth Amendment's due process clause, would not permit jurisdiction under the facts presented.

The pleadings and affidavits show that plaintiff's and defendant's representatives were both present at a trade meeting in Atlanta in May, 1978. None of the affidavits makes it clear who initiated negotiations. After the meeting, plaintiff sent a representative to discuss the job with defendants in New York which led to plaintiff placing bids for certain printing work. Defendant then sent a purchase order to plaintiff's office in Tennessee, for the printing and binding of 5,000 copies of a 120-page document entitled the "Weekly Garden Planner," a 1979 calendar. Thereafter, negotiations by phone and mail resulted in plaintiff's acceptance of the order, and Morgan Guaranty Trust of New York issued a letter of credit for $14,592.90 to guarantee the amount of the contract.

In order to fulfill its obligations under the agreement, plaintiff (1) ordered paper for the document from a Nashville firm; (2) had color plates made by a Goodlettsville, Tennessee, firm; (3) ordered specified cover stock from a Kingsport firm; (4) ordered stamping dies to be made by a Nashville firm; (5) purchased individual mailing cartons from a container firm in Franklin, Kentucky; (6) and purchased 5,000 vinyl pockets from a Nashville firm. While these steps were proceeding, the defendant itself contacted the Kingsport firm and changed the color of the cover stock.

---

1. It was error for the courts below to treat defendant's motion to dismiss under Rule 12.-02(2), T.R.C.P., as a Rule 56 motion for summary judgment. In 6 Moore, *Federal Practice* (Part 2) ¶ 56.17[36] at 913 (1980), the author states succinctly that the "summary judgment procedure does not properly apply to jurisdictional issues." He explains in ¶ 65.03 at pp. 55–56 that the motion to dismiss for lack of jurisdiction is a motion *in abatement*, as opposed to the motion for summary judgment, which is a motion *in bar* and goes to the merits of the action. Thus, only where the 12.02(2) motion is treated as a motion on the merits may it be handled as a Rule 56 motion. The author does observe, however, that motions to dismiss under the corresponding federal rule, Rule 12(b)(2), have been treated as summary judgment proceedings. *See ACS Industries, Inc. v. Keller Industries, Inc.*, 296 F.Supp. 1160, 1161 (D.Conn.1969). But this is not the preferred procedure. *United Dairy Farmers Coop. Assn. v. Milk Control Comm.*, 47 F.R.D. 1 (W.D.Pa. 1969). However, this error was harmless, considering the disposition of the merits that we make *infra*.

2. *See* Appendix.

On November 30, 1978, the merchandise was shipped to defendant in New York, but technicalities involving the letter of credit (irrelevant to the decision here) resulted in non-payment and, eventually, this lawsuit.

A significant decision dealing with the Tennessee "long arm" statute is *Southern Machine Company, Inc. v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir. 1968), which involves a Tennessee corporation's suit against a foreign corporation. In *Mohasco*, the court recognized that the broadly-phrased Tennessee long-arm statute is limited only by due process considerations as established in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *International Shoe* held that "traditional notions of fair play and substantial justice" can be protected only if the foreign defendant has certain "minimum contacts" with the forum state.

*Mohasco* attempted to synthesize the rules announced in *International Shoe* and the subsequent decisions, *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) and *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), into a "three-part test" to determine whether sufficient minimum contacts exist:

" ... [T]hree criteria emerge for determining the present outerlimits of *in personam* jurisdiction based on a single act. First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." 401 F.2d at 381.[3]

Though *Mohasco* was the first case to fully analyze Tennessee's long-arm statute, the first state case to do so was *Darby v. Superior Supply Co.*, 458 S.W.2d 423 (Tenn. 1970). That case involved the purchase of mahogany lumber by an Alabama individual, from the plaintiff, a Tennessee supply firm in Chattanooga. The order was placed by telephone and the plaintiff filled the order from available stock. A servant of the defendant took delivery of the lumber in Tennessee. Darby later refused to pay for the lumber and Superior sued for payment due. The *Darby* majority seemed to be impressed by the following factors in finding a failure of jurisdiction: (1) that the defendant, an individual, entered the forum state only through his servant, the driver of the truck which hauled the lumber away; (2) that the transaction was a retail purchase by an individual involving only the "modest amount" of $3,639.48; and (3) that filling defendant's order required "no special manufacturing operations in Tennessee." *Id.* at 426.

The Chancellor, Court of Appeals and defendant all rely heavily upon the *Darby* decision. But *Darby*, a 4–1 decision, has been criticized by legal commentators. In Comment, "Jurisdiction Over Foreign Corporations in Tennessee," 42 Tenn.L.Rev. 325 (1975), the author cites authority describing *Darby* as an "unduly restrictive interpretation of due process and federal decisions." *Id.* at 339. *See also, William W. Bond, Jr. & A., Inc. v. Montego Bay Dev. Corp.*, 405 F.Supp. 256 (W.D.Tenn.1975), especially n.4 at 259. The Comment also points out that the *Darby* decision made reference to the fact that had Darby been a corporation rather than an individual, the result may have been different. *See, Darby v. Superior Supply Co., supra* at 425–26, discussing *Olberling v. Illinois Central Railroad Co.*, 346 U.S. 338, 74 S.Ct. 83, 98 L.Ed. 39 (1953). *Darby* should not be deemed to be authority beyond the particular facts there con-

---

**3.** The *Mohasco* analysis has recently been applied in cases such as *Poyner v. Erma Werke GMBH*, 618 F.2d 1186 (6th Cir. 1980); *Gaston v. Aquaslide 'N' Dive Corp.*, 487 F.Supp. 16 (E.D.Tenn.1980); *Warren v. Dynamics Health Equipment Mfg. Co., Inc.*, 483 F.Supp. 788, 790 (N.D.Tenn.1980); *Carborundum Co. v. Bay Fabricators, Inc.*, 461 F.Supp. 437 (E.D.Tenn. 1978).

sidered. In our view, it did not sanction the assertion of jurisdiction under our "long arm" statute to the maximum extent permitted by the Fourteenth Amendment, which is the declared intent of our General Assembly.

To determine whether Chelsea purposefully availed itself of the privilege of transacting business in Tennessee, there are certain matters addressed which are immaterial to the outcome. *Mohasco* specifically held that the physical presence of the defendant or its agent in the forum state is "not necessary" for the transaction of business to serve as a minimum contact. *See also Good Hope Industries v. Ryder Scott Co.*, Mass., 389 N.E.2d 76 (1979). Nor is it material that defendant did not solicit the business or that the contract was executed in the foreign state. 401 F.2d at 382. Similarly, the determination of which party initiated the business transaction is irrelevant. Representatives of both parties met at a Booksellers Convention in Atlanta where they first discussed the possibility of plaintiff Nicholstone doing some business with defendant Chelsea House. It is not clear from the record who solicited whom first. However, as noted in *Pedi Bares, Inc. v. P & C Food Markets, Inc.*, 567 F.2d 933 (10th Cir. 1977) the determination as to who made the initial solicitation is not a decisive factor. The crucial factor is that the subsequent conduct of the defendant shows that it purposefully availed itself of the privilege of carrying on activities to secure goods from a manufacturer and seller located within the forum. Likewise, technicalities of the execution of the contract cannot change the business realities of the transaction.

As pointed out in *Mohasco*, citing and quoting from *Shealy v. Challenger Manufacturing Co.*, 304 F.2d 102 (4th Cir. 1962), the significant point is that defendant did choose to do business with plaintiff, and it cannot diminish the purposefulness of that choice that defendant was fortunate enough to take advantage of plaintiff's low bid, even if accomplished without active solicitation. 401 F.2d at 382. It is clear,

therefore, that the business transaction was beneficial to both parties, and that though plaintiff placed bids for the work and sent a salesman to discuss details with defendant in New York, the transaction began as a result of a purchase order having been sent by defendant to plaintiff in Tennessee.

The Supreme Court has dealt with the application of a state long arm statute and the corresponding exercise of *in personam* jurisdiction over a nonresident defendant in several recent decisions. In *Kulko v. Superior Court of California*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978), in which the court denied personal jurisdiction over the non-resident defendant father in an action for child support, the court reiterated that an essential criterion in all such cases is whether the "quality and nature" of the defendant's activity is such that it is "reasonable" and "fair" to require him to conduct his defense in the forum state. The court held that a father who agrees in the interests of family harmony and his children's preferences, to allow them to spend more time in California than was required under a separation agreement can hardly be said to have "purposefully availed himself" of the "benefits and protections" of California's laws. Since the separation agreement had virtually no connection with the forum state, in weighing the facts, the court held that California was not a "fair forum." Although *Kulko* applied the "minimum contacts" test of *International Shoe* to determine that the requisite "affiliating circumstances" of *Hanson* were not present, the court did so in a non-commercial context involving two individuals.

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) is a products liability suit in which the respondents, the Robinsons, purchased a new Audi automobile from a Volkswagen dealer in New York and brought suit in Oklahoma against the manufacturer, the importer, regional distributor and retail dealer for damages sustained in an Oklahoma accident. While driving through Oklahoma on the way to their new home in Arizona, another car struck their

Audi in the rear, causing a fire which severely burned Kay Robinson and her two children. The court noted the apparent paucity of contacts between the defendant and Oklahoma, and that the contacts were far too attenuated to justify the exercise of Oklahoma's *in personam* jurisdiction over the defendant. In reaching that conclusion, the court noted that the defendants did not avail themselves of any of the privileges of Oklahoma law. It is unreasonable to base jurisdiction on one, isolated occurrence that a single automobile sold in New York to New York residents happened to suffer an accident while passing through Oklahoma. In response to the claim that an automobile is mobile and, therefore, by its very design and purpose it was "foreseeable" that such an injury could occur in Oklahoma, the court noted that such "foreseeability" alone has never been a sufficient benchmark for personal jurisdiction under the due process clause.

> "But the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." 444 U.S. at 297, 100 S.Ct. at 567.

In applying the *World-Wide* test of foreseeability to the facts in the instant case, it is important to observe that defendant entered into an agreement which provided for a customized product including the manufacture of specialized goods such as color plates, stamping dies, cover stock, from three other Tennessee companies and the purchase of specialized items such as paper, mailing cartons and vinyl pockets from two other Tennessee firms and a Kentucky firm. Moreover, defendant dealt directly with at least one of plaintiff's subcontractors in Tennessee, the cover stock firm in Kingsport. It was foreseeable that economic consequences would occur in Tennessee flowing from this business transaction. Therefore, it is difficult to conceive of defendant not having foreseen the possibility of its being haled into a Tennessee court upon refusal to pay for the manufactured products.

It should be noted that one of the ingredients of jurisdiction missing in *Darby*, the presence of a "special manufacturing operation," is found in this case. These custommade bindings and casings were not simply taken from stock, as was the lumber in *Darby*. This point is considered in *Gardner Engineering Corp. v. Page Engineering Co.*, 484 F.2d 27 (8th Cir. 1973), where jurisdiction was permitted to reach into Illinois from Arkansas. Involved was defendant's contract to fabricate certain customized items for the construction of a bridge in Arkansas by plaintiffs. The court found an important "contact" in that the forum state was the place of performance of a customized contract. *Id.* at 32.

The other two parts of the *Mohasco* test follow as a matter of course. It is clear that the cause of action here arose from the business transacted in Tennessee, i. e., no cause of action would have arisen had plaintiff not manufactured the products in question. The second part of the *Mohasco* test is satisfied when it can be shown that "many of the operative facts" of the controversy arose from the contract "and from acts performed under that agreement." 401 F.2d at 384.

> "Mohasco's participation in establishing those obligations and in setting in motion that performance is clear." *Id.*

As to the final part of the *Mohasco* test, whether it is reasonable to require Chelsea to defend in Tennessee, *Mohasco* held that ultimately, that question "must depend upon a determination of whether Tennessee has an interest in resolving the conflict at issue." *Id.* at 384. Having stated the question, *Mohasco* answered:

> "[W]hen the contract is with a resident of Tennessee, the State's interest in resolving a suit based on the contract and brought by that resident cannot be doubted." *Id.* at 385.

Tennessee clearly has an interest in protecting its residents against a breach of contract by nonresidents for purchase of goods made in this state. The transaction in this

case indicates that it would not offend "traditional notions of fair play and substantial justice" to settle this dispute in Tennessee. *Poyner v. Erma Werke GMBH*, 618 F.2d 1186, 1191 (6th Cir. 1980).

Finally, we balance this interest of the State against the defendant's burden of defending himself in the forum state. *See, e. g., Gardner Engineering Corp. v. Page Engineering Co., supra*, 484 F.2d at 31. In *Poyner v. Erma Werke GMBH, supra*, Judge Phillips makes the point that the same conditions of modern technology which have made interstate business transactions flourish serve also to ease the burden of defending in a foreign forum:

> "As recognized in both the majority and dissenting opinions in *World-Wide Volkswagen, supra*, modern transportation and communication have facilitated this process, greatly increasing the amount of business conducted across sovereign boundaries. See also *McGee supra*. As recognized in *McGee* this growth in markets, transportation and communication, in effect, have also made it much less burdensome for a party to defend himself in a state where he engages in economic activity." 618 F.2d at 1192.

In this case, it does not appear that trial in Tennessee would be unfair or burdensome to either party.

It is an understatement to say that there are numerous cases discussing *in personam* jurisdiction in the setting of a single business transaction. In *Lakeside Bridge & Steel v. Mountain State Const. Co.*, 597 F.2d 596 *cert. denied* 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980), Justice White, dissenting from the denial of a writ of certiorari, noted that "the question of personal jurisdiction over a non-resident corporate defendant based on contractual dealings with a resident plaintiff has deeply divided the federal and state courts." He regrets that the Supreme Court refused to offer any clear guidance on this important problem.

One, however, finds support for our current position in a vast array of sources. In *Colony Press Inc. v. Fleeman*, 17 Ill.App.3d 14, 308 N.E.2d 78 (1974) an Ohio corporate defendant, by placing a single interstate telephone order, satisfied the "minimum contact" requirements of the due process clause because the defendant voluntarily entered into a business transaction with an Illinois plaintiff. In *Product Promoters, Inc. v. Cousteau*, 495 F.2d 483, 494–499 (5th Cir. 1974), a breach of contract suit in which the court held that minimum contacts were sufficient, the court reasoned that neither the defendant nor the defendant's agents need be physically present within the state so long as the defendant's contact with the forum was deliberate and not fortuitous. *See also, Good Hope Industries v. Ryder Scott Co., supra; cf. World-Wide Volkswagen, supra* at 8. The Wisconsin Supreme Court in *Zerbel v. H. L. Federman & Co.*, 48 Wis.2d 54, 179 N.W.2d 872 (1970) held that when a non-resident defendant contracted for services, i. e. the preparation of a financial report, which would be performed in part in Wisconsin, the defendant purposefully availed himself of the privilege of conducting activities in Wisconsin.

*Proctor & Schwartz, Inc. v. Cleveland Lumber Co.*, 228 Pa.Super. 12, 323 A.2d 11 (1974) seems closely analogous to the instant case. A Pennsylvania corporate seller brought suit against a Georgia corporate buyer to recover the balance due on the purchase price of specially ordered lumber drying equipment and related materials. Alleging certain defects in the manufacture of the goods purchased, the defendant refused to make further payments. As in the instant case, defendant maintained no offices, no interest in any real or personal property, no agents or representatives, nor any business contacts within the forum. The Pennsylvania "long-arm" statute, as does that of Tennessee, provides for the exercise of full constitutional power over foreign corporations. The *Cleveland* court adopted the *Mohasco* tripartite analysis to determine that the requisite "minimum contacts" were present for the exercise of *in personam* jurisdiction. In examining the nature of defendant's conduct, the court noted that it was not a passive purchaser

which blandly submitted to the mandates of a foreign seller. Rather the defendant conducted extensive and active negotiations with the plaintiff. Relying upon *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 233 (6th Cir. 1972) the court stated that "[t]o the extent the buyer vigorously negotiates . . . and . . . departs from the passive buyer role it would seem that any unfairness which would normally be associated with the exercise of long-arm jurisdiction over him disappears." The defendant should reasonably have anticipated that a failure to make the installment payments on its obligation would have consequences within the forum state and could result in its being called to defend itself in the state whose laws governed the contract.

*William W. Bond, Jr. & A., Inc. v. Montego Bay Dev. Corp., supra*, is persuasive on the facts. In *Bond*, the plaintiff, a Tennessee corporation, entered into a contract with a Maryland corporation to prepare architectural, mechanical, electrical, and structural plans for a Holiday Inn to be built in Maryland. Defendant solicited the job. The contract was executed in Maryland. Applying the *Mohasco* test, the court found that defendant had purposely availed itself of the privilege of doing business in Tennessee because it was "necessarily foreseeable to the parties that at least a substantial part of the services plaintiff was to provide would be performed . . . in Tennessee." *Id.*, 405 F.Supp. at 259. Citing *Mohasco*, the court noted that it was not controlling that no representative of defendant ever came to Tennessee in connection with the deal. *Id.* It summarized:

"Here, a business transaction set in motion by defendants had a realistic, foreseeable and considerable impact on commerce in Tennessee." *Id.*

Likewise, the court found that the cause of action arose from the transaction because the operative facts of the controversy were related to the defendant's contact with Tennessee. And, finally, the court found that it would be reasonable to require defendant to defend in Tennessee:

"The interest of Tennessee here is to resolve a contract dispute brought by a resident to recover the alleged benefit of his bargain. Even a one-shot contract, if substantial enough in its effect on Tennessee commerce, appears to be a potentially sufficient contact with the forum state under Sixth Circuit standards." 405 F.Supp. 260.

We conclude that the plaintiff here brought suit in the proper forum within the due process guidelines set forth in the cases discussed. The decision of the Court of Appeals is reversed and this cause is remanded to the trial court for further appropriate proceedings. Costs are taxed against the appellees.

HARBISON, C. J., and FONES, COOPER and DROWOTA, JJ., concur.

## APPENDIX

T.C.A., § 20–2–214:

"*Jurisdiction of persons unavailable to personal service in state—Classes of actions to which applicable.*—(a) Persons who are nonresidents of Tennessee and residents of Tennessee who are outside the state and cannot be personally served with process within the state are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from:

"(1) The transaction of any business within the state;

"(2) Any tortious act or omission within this state;

"(3) The ownership or possession of any interest in property located within this state;

"(4) Entering into any contract of insurance, indemnity, or guaranty covering any person, property, or risk located within this state at the time of contracting;

"(5) Entering into a contract for services to be rendered or for materials to be furnished in this state;

"(6) Any basis not inconsistent with the constitution of this state or of the United States;

"(7) any action of divorce, annulment or separate maintenance where the parties lived in the marital relationship within this state, notwithstanding one party's subsequent departure from this state, as to all obligations arising for alimony, custody, child support, or property settlement, if the other party to the marital relationship continues to reside in this state.

"(b) 'Person' as used herein shall include corporations and all other entities which would be subject to service of process if present in this state.

"(c) Any such person shall be deemed to have submitted to the jurisdiction of this state who acts in the manner above described through an agent or personal representative."