# FILED

**November 30, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

**IN THE COURT OF APPEALS OF TENNESSEE,**
**AT NASHVILLE**

_____

|  |  |  |
|---|---|---|
| | ) | |
| **J. MICHAEL TOMLIN,** | ) | Davidson County Chancery Court |
| | ) | No. 97-2691-I |
| Plaintiff/Appellant, | ) | |
| | ) | |
| VS. | ) | C. A. No. |
| | | M1999-01329-COA-R3-CV |
| | ) | |
| **COLLEGIATE TECHNOLOGIES, INC.,** | ) | |
| **RETAIL TECHNOLOGIES, INC.,** | ) | |
| **THE CTI GROUP, INC., BYRON J.** | ) | |
| **BURPULIS and KENNETH M. BOSACCO**, | ) | |
| | ) | |
| Defendants/Appellees. | ) | |
| | ) | |

_____
—

From the Chancery Court of Davidson County at Nashville.
**Honorable Irvin H. Kilcrease, Jr., Chancellor**

**Philip N. Elbert**,
**Donna L. DeLong**,
NEAL & HARWELL, PLC, Nashville, Tennessee
Attorneys for Plaintiff/Appellant.

**D. Randall Mantooth**,
LEITNER, WILLIAMS, DOOLEY, & NAPOLITAN, PLLC, Nashville, Tennessee
Attorney for Defendants/Appellees.

OPINION FILED:

**REVERSED AND REMANDED**

**FARMER, J.**

**HIGHERS, J.**: (Concurs)
**LILLARD, J.**: (Concurs)

Plaintiff J. Michael Tomlin appeals an order of the trial court granting a motion to dismiss for lack of personal jurisdiction filed by Defendants Collegiate Technologies, Inc. ("Collegiate"), Retail Technologies, Inc. ("Retail"), The CTI Group, Inc. ("CTI"), Byron J. Burpulis, and Kenneth M. Bosacco. For the reasons set forth below, we reverse the ruling of the trial court.

The relationship between Mr. Tomlin and Defendants began when Mr. Tomlin read an article in the **Wall Street Journal** about the LIFEFAX Emergency Response System ("LIFEFAX"), a medical response identification card designed to allow healthcare providers to access a database containing the cardholder's medical information. After reading this article, Mr. Tomlin telephoned LIFEFAX and spoke with Samuel Caine, an officer and director of CTI. Mr. Caine then referred Mr. Tomlin to Mr. Burpulis and Mr. Bosacco, who are owners, officers, and directors of Collegiate, Retail, and CTI. Collegiate, Retail, and CTI are each incorporated under the laws of the state of Delaware.[1] Mr. Burpulis and Mr. Bosacco attempted to convince Mr. Tomlin to market LIFEFAX, subsequently mailing marketing materials and product samples to Mr. Tomlin in Tennessee. In the course of

negotiating the parties' relationship, Mr. Burpulis and Mr. Bosacco also made two or three telephone calls to Mr. Tomlin in Tennessee. Mr. Tomlin subsequently traveled to Delaware where the parties executed a contract entitled "Independent Contractor Agreement" under which Mr. Tomlin agreed to market LIFEFAX in exchange for sales commissions to be paid by Defendants. After the execution of this contract, Mr. Tomlin received telephone, mail, and fax communications from Defendants almost daily regarding his efforts to promote their product. Additionally, Mr. Burpulis and Mr. Bosacco, acting through a director of CTI, mailed to Mr. Tomlin 200 promotional LIFEFAX memberships to be distributed in conjunction with Mr. Tomlin's marketing of this product. Mr. Tomlin's marketing efforts resulted in the distribution of free LIFEFAX memberships as well as the sale of LIFEFAX memberships to citizens of the state of Tennessee. According to Mr. Tomlin, Defendants continue to send renewal notices to Tennessee residents to whom he sold or gave LIFEFAX memberships.

In August of 1997, Mr. Tomlin filed a complaint alleging that Defendants had (1) fraudulently induced him to enter into the parties' "Independent Contractor Agreement," (2) violated the Tennessee Consumer Protection Act, and (3) engaged in fraud, misrepresentation, and bad faith. Defendants then filed a motion to dismiss for lack of personal jurisdiction or for summary judgment.[2] In his response to Defendants' motion, Mr. Tomlin noted several contacts with the state of Tennessee in addition to those stated above, including (1) that Defendants hired Tom Jackson & Associates, a public relations firm in Nashville, to promote LIFEFAX, (2) that three officers and/or directors of CTI traveled to Nashville to train Tom Jackson & Associates regarding the marketing of LIFEFAX, (3) that Mr. Burpulis and Mr. Bosacco personally approved and encouraged the distribution of free trial LIFEFAX memberships to persons affiliated with Tennessee's state university system, including the president and athletic director of Middle Tennessee State University, (4) that Defendants contacted and hired STS, a Knoxville marketing company, to telemarket LIFEFAX, (5) that an officer and director of CTI traveled to Knoxville to urge STS to serve as a distributor of LIFEFAX and to instruct STS regarding marketing procedures, (6) that Mr. Burpulis and Mr. Bosacco participated by telephone in two meetings between

their representatives and STS in Knoxville, and (7) that Mr. Burpulis and Mr. Bosacco traveled to Chattanooga in the summer of 1995 to meet with Transcommunications, Inc. to discuss the placing of CTI's 800 service with that company. The trial court subsequently entered an order granting Defendants ' motion and dismissing Mr. Tomlin's claims for lack of personal jurisdiction. This appeal followed.

The sole issue raised on appeal is whether the trial court erred in dismissing Mr. Tomlin's claims for lack of personal jurisdiction. When considering a motion to dismiss, the trial court must give a liberal construction to the plaintiff's complaint and assume the truth of the averments contained therein. *See Lewis v. Allen*, 698 S.W.2d 58, 59 (Tenn. 1985); *Holloway v. Putnam County*, 534 S.W.2d 292, 296 (Tenn. 1976). The trial court is not required to make findings of fact but must only determine whether the plaintiff's complaint alleges facts sufficient to survive a motion to dismiss. *See S & S Screw Mach. Co. v. Cosa Corp.*, 647 F. Supp. 600, 605 (M.D. Tenn. 1986). Because the issue in the instant case is a question of law, our review of the trial court's ruling is *de novo* with no presumption of correctness. *See, e.g., Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen and Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999); T.R.A.P. 13(d).

The United States Supreme Court has established standards for determining whether the exercise of personal jurisdiction over a nonresident defendant is allowable under the Due Process Clause of the Fourteenth Amendment. In *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), the Court stated that such an exercise of jurisdiction is appropriate when the defendant has "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Although the Court did not define the phrase "minimum contacts," it did indicate that, in some cases, a single contact with the forum state could support a finding of jurisdiction. *See id.* at 318. It also suggested, however, that "irregular" or "casual" contacts with the forum state are insufficient to serve as the basis of jurisdiction. *See id.* at 320. The Court stated that the focus of the "minimum contacts" inquiry should be the "quality and nature of the activity in relation to the fair and orderly administration of

the laws which it was the purpose of the due process clause to insure." *Id.* at 319. In determining that a Delaware shoe manufacturer was amenable to suit in the state of Washington, the Court offered the following rationale:

> [T]o the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue.

*Id.*

The proper application of the "minimum contacts" test has been further explained in a number of Supreme Court cases following *International Shoe*. In *McGee v. International Life Insurance Co.*, 355 U.S. 220 (1957), the Court upheld the exercise of jurisdiction by a California court over a Texas corporation whose only contact with the state of California was that it sold a single insurance policy to a California resident. *See id.* at 223. In concluding that the "minimum contacts" standard had been satisfied, the Court stated: "It is sufficient for purposes of due process that the suit was based on a contract which had a substantial connection with [the forum state]." *Id.* In *Hanson v. Denckla*, 357 U.S. 235 (1958), the Court focused on the "quality and nature" of the contacts, holding that the trial court lacked personal jurisdiction because the nonresident defendant did not "purposefully avail[] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 253 (citing *International Shoe*, 326 U.S. at 319).

In addition to asking whether the nonresident defendant has "minimum contacts" with the forum state, a court must also consider those contacts in light of other factors and determine if the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*International Shoe*, 326 U.S. at 316. Such factors include 1) the burden on the defendant, 2) the forum state's interest in adjudicating the dispute, 3) the plaintiff's interest in obtaining convenient and effective relief, 4) the judicial system's interest in obtaining the most efficient resolution of controversies, and 5) the shared interest of the several states in furthering fundamental substantive social policies. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). In *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102 (1987), the Court considered these five factors and held that, even if the "minimum contacts" inquiry was satisfied, the assertion of personal jurisdiction by the California court over the Japanese defendant would be unreasonable. *See id.* at 114. A majority of the Court in *Asahi* agreed, however, that a nonresident could be considered to have purposely directed its business activities toward a state if it "market[ed] the product through a distributor who has agreed to serve as the sales agent in the forum state." *Id.* at 112.

The exercise of personal jurisdiction by a Tennessee court over nonresident defendants such as those in the case at bar is governed by section 20-2-214 of the Tennessee Code Annotated, which provides in pertinent part as follows:

> Persons who are nonresidents of Tennessee and residents of Tennessee who are outside the state and cannot be personally served with process within the state are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from:
> (1) The transaction of any business within the state;
> (2) Any tortious act or omission within this state;
> (3) The ownership or possession of any interest in property located within this state;
> (4) Entering into any contract of insurance, indemnity, or guaranty covering any person, property, or risk located within this state at the time of contracting;
> (5) Entering into a contract for services to be rendered or for materials to be furnished in this state;
> (6) Any basis not inconsistent with the constitution of this state or of the United States;
> (7) Any action of divorce, annulment or separate maintenance where the
>
> parties lived in the marital relationship within this state, notwithstanding

one party's subsequent departure from this state, as to all obligations arising for alimony, custody, child support, or marital dissolution agreement, if the other party to the marital relationship continues to reside in this state.

Tenn. Code Ann. § 20-2-214(a) (1994). This statute was intended to reach to the full extent allowable under the Due Process Clause of the Fourteenth Amendment and thus should be given a liberal construction. *See J.I. Case Corp. v. Williams*, 832 S.W.2d 530, 531 (Tenn. 1992); *Masada Inv. Corp. v. Allen*, 697 S.W.2d 332, 334 (Tenn. 1985); *Southland Express, Inc. v. Scrap Metal Buyers of Tampa, Inc.*, 895 S.W.2d 335, 338 (Tenn. Ct. App. 1994).

The courts of this state have applied section 20-2-214 and the "minimum contacts" test of *International Shoe* and its progeny on several prior occasions. First, in *Nicholstone Book Bindery, Inc. v. Chelsea House Publishers*, 621 S.W.2d 560 (Tenn. 1981), Nicholstone, a Tennessee corporation, agreed to perform printing and binding services at its office in Tennessee and then ship the finished product to Chelsea, a New York publisher. *See id.* at 561. In an action brought by Nicholstone against Chelsea for nonpayment under the contract, the issue became whether the Tennessee court could assert personal jurisdiction over Chelsea. *See id.* The *Nicholstone* court adopted the three part analysis of *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir. 1968), stating as follows:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Nicholstone*, 621 S.W.2d at 562 (quoting *Mohasco*, 401 F.2d at 381). Applying these factors, the court found that Chelsea's contacts with the state of Tennessee were sufficient to subject Chelsea to the jurisdiction of the Tennessee courts. *See id.* at 566.

Additionally, in *Masada Investment Corp. v. Allen*, 697 S.W.2d 332 (Tenn. 1985), the Tennessee Supreme Court considered whether Allen, a Texas attorney, had sufficient contacts with the state of Tennessee to confer jurisdiction on the Tennessee courts. *Id.* at 333. Allen's contacts with Tennessee consisted of the following: 1) He prepared a sales contract and a warranty deed in connection with a pending purchase of real property located in Tennessee; 2) He sent the aforementioned sales contract and warranty deed to Tennessee for execution; and 3) He participated in the closing on the property, which took place at his office in Texas. *See id.* In determining whether Allen had "minimum contacts" with the state of Tennessee, the court adopted the five factor analysis of *Shelby Mutual Insurance Co. v. Moore*, 645 S.W.2d 242 (Tenn. Ct. App. 1981). *See Masada*, 697 S.W.2d at 334. The court thus considered 1) the quantity of the contacts, 2) the nature and quality of the contacts, 3) the source and connection of the cause of action with the contacts, 4) the interest of the forum state, and 5) convenience.[3] *See id.* Applying these factors, the court found that Allen's contacts with the state of Tennessee were sufficient to satisfy the requirements of section 20-2-214(a)(6) and reversed the trial court's dismissal of the claims asserted against Allen. *See id.* at 335.

Finally, in *J.I. Case Corp. v. Williams*, 832 S.W.2d 530 (Tenn. 1992), Williams, an Arkansas farmer, met a sales representative of J.I. Case while attending the Mid-South Fair in Memphis. *See id.* at 531. During a subsequent visit by the sales representative to Williams' farm, the parties reached an agreement regarding the purchase and lease of some farm equipment. *See id.* Instruments reciting this agreement were then prepared and signed by J.I. Case in Memphis and sent to Arkansas where they were signed by Williams. *See id.* J.I. Case subsequently filed an action against Williams in a Tennessee court seeking reformation of the agreement. *See id.* The Tennessee Supreme Court upheld

the trial court's assertion of personal jurisdiction over Williams, stating as follows:

> The contacts with Tennessee in the case before the Court were much more substantial than those in *Masada*. . . . The initial contact between the parties occurred at Case's equipment exhibit at the fair in Tennessee; the instruments controlling the transaction between the parties were prepared and executed by Case in Tennessee; financing for the balance due under the agreement was furnished by a company located in Tennessee; the agreement executed by the parties contemplated that payments due under the agreement would be made in Tennessee; and parts and labor for the repair and maintenance of the equipment under the warranty agreement were to be furnished in or from Tennessee. . . . These significant contacts by Williams with Tennessee relating directly to the underlying cause of action form an adequate basis for the assertion of jurisdiction. These contacts resulted in a continuing relationship between Williams and the State and are such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice and therefore does not violate the Due Process Clause of the United States Constitution.

*Id.* at 533.

We now consider whether, under the unique facts of the instant case, the trial court could have asserted jurisdiction over Collegiate, Retail, CTI, Mr. Burpulis, and Mr. Bosacco pursuant to section 20-2-214. Defendants' contacts with the state of Tennessee relative to Mr. Tomlin's claims for relief are as follows: (1) Defendants mailed marketing materials and product samples to Mr. Tomlin in Tennessee; (2) During contract negotiations, Defendants made two or three telephone calls to Mr. Tomlin in Tennessee; (3) Defendants entered into a contract with Mr. Tomlin, who is a Tennessee resident; (4) Defendants communicated with Mr. Tomlin at his office in Tennessee on an almost daily basis; (5) Defendants supervised and controlled Mr. Tomlin's activities in Tennessee; (6) Defendants mailed to Mr. Tomlin in Tennessee 200 promotional LIFEFAX memberships; and (7) Defendants personally approved of and encouraged Mr. Tomlin's distribution of free LIFEFAX memberships to certain Tennessee residents; (8) Defendants hired Tom Jackson & Associates, a Nashville public relations firm, to promote LIFEFAX; (9) Defendants traveled to Nashville to train Tom Jackson & Associates regarding the marketing of LIFEFAX; (10) Defendants contacted and hired STS, a Knoxville

marketing company, to telemarket LIFEFAX; (11) Defendants traveled to Knoxville to deal with STS and to instruct STS regarding its marketing procedures; (12) Defendants participated by telephone in two meetings held in Knoxville between its representatives and STS; (13) Defendants traveled to Chattanooga in the summer of 1995 to meet with Transcommunications, Inc. to discuss the possibility of placing its 800 service with that company; and (14) Defendants continue to mail renewal nto its Tennessee customers.[4]

Subsection (a)(1) of section 20-2-214 confers jurisdiction over a nonresident defendant with respect to any action or claim for relief arising from "[t]he transaction of any business within the state." Tenn. Code Ann. § 20-2-214(a)(1) (1994). In the instant case, the "Independent Contractor Agreement" between the parties was actually executed in Delaware rather than Tennessee. Prior to its execution, however, Defendants negotiated the terms of this agreement during telephone conversations with Mr. Tomlin in Tennessee. After the execution of the agreement, Defendants continued to supervise and control Mr. Tomlin's marketing of LIFEFAX, communicating with Mr. Tomlin in Tennessee on an almost daily basis. It is also notable that Defendants maintained business relationships with other Tennessee entities including Tom Jackson & Associates, STS, and Transcommunications, Inc. Finally, and most importantly, Defendants continue to do business with and mail renewal notices to its customers in Tennessee. Thus, we think that Defendants have transacted and continue to transact business within the state of Tennessee.[5] Accordingly, we conclude that the trial court could have exercised personal jurisdiction over Defendants pursuant to section 20-2-214(a)(1).

Under subsection (a)(5) of section 20-2-214, a Tennessee court may assert personal jurisdiction over a nonresident defendant with respect to any action or claim for relief arising from "[e]ntering into a contract for services to be rendered or for materials to be furnished in this state." Tenn. Code Ann. § 20-2-214(a)(5) (1994). Under the terms of the parties' "Independent Contractor Agreement," Mr. Tomlin agreed to market LIFEFAX in exchange for sales commissions to be paid by Defendants. This agreement did not specify to whom or from where Mr. Tomlin would market

Defendants' product. Defendants knew, however, that Mr. Tomlin lived and maintained an office in Tennessee. Defendants likely understood, then, that Mr. Tomlin intended to market LIFEFAX to Tennessee residents. Under the supervision and with the approval of Defendants, Mr. Tomlin did, in fact, market Defendants' product to Tennessee residents. As a result of Mr. Tomlin's efforts, Defendants entered into contracts to furnish LIFEFAX cards and to provide LIFEFAX services to its customers in Tennessee. Mr. Tomlin's claims against Defendants are directly related to these contracts. Thus, we conclude that the trial court could have asserted personal jurisdiction over Defendants pursuant to section 20-2-214(a)(5).

Finally, subsection (a)(6) of section 20-2-214 provides that the assertion of personal jurisdiction over a nonresident defendant is proper with respect to any action or claim for relief arising from "[a]ny basis not inconsistent with the constitution of this state or of the United States." Tenn. Code Ann. § 20-2-214(a)(6) (1994). This provision requires us to consider whether there are "minimum contacts" between Defendants and the state of Tennessee such that maintenance of an action against Defendants in a Tennessee court does not offend "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316. As stated above, this inquiry involves the consideration of five factors, including (1) the quantity of the contacts, (2) the nature and quality of the contacts, (3) the source and connection of the cause of action with the contacts, (4) the interest of the forum state, and (5) convenience. *See Masada*, 697 S.W.2d at 334. With respect to the first of these factors, Mr. Tomlin has alleged no less than fourteen separate contacts of Defendants with the state of Tennessee. These contacts are more numerous than the contacts of the defendants in *Nicholstone*, *Masada*, and *J.I. Case*. Additionally, we find that the nature and quality of Defendants contacts with the state of Tennessee are substantial in that they involve an ongoing business relationship with Mr. Tomlin as well as other Tennessee individuals and corporations. By contrast, the relationship between the parties in *Masada* involved only a single real estate transaction. With respect to the third of these factors, we find that Defendants' contacts with the state of Tennessee are directly related to Mr. Tomlin's cause of

action. In light of Mr. Tomlin's allegations of fraud perpetrated upon the citizens of this state, we also think that Tennessee has a strong interest in providing a forum for the adjudication of Mr. Tomlin's claims. Finally, we recognize that Defendants would be inconvenienced if required to defend a lawsuit in Tennessee. This inconvenience would be no greater, however, than the inconvenience that would be experienced by Mr. Tomlin if he was forced to pursue his claim in a Delaware court. Considering each of the five factors discussed above, we conclude that Defendants have "minimum contacts" with the state of Tennessee such that the exercise of personal jurisdiction by the Tennessee courts over Defendants does not offend "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316. Consequently, we hold that the trial court could have exercised personal jurisdiction over Defendants pursuant to section 20-2-214(a)(6).

Based on the foregoing, we find that the exercise of personal jurisdiction over Defendants by the courts of this state is appropriate under subsections (a)(1), (a)(5), and (a)(6) of section 20-2-214. We therefore conclude that the trial court erred in dismissing Mr. Tomlin's claims for lack of personal jurisdiction. In light of this conclusion, the ruling of the trial court is reversed and the cause is remanded for further proceedings consistent with this opinion. Costs on appeal are taxed to Defendants, for which execution may issue if necessary.

_____

FARMER, J.

_____

HIGHERS, J.

_____

LILLARD, J.