**FLORATINE PRODUCTS GROUP, INC., Plaintiff,**

v.

**Terrance BRAWLEY, Tampa Bay Turf Management, Inc. D/B/A Floratine of Florida Defendants.**

**No. 02–2776–DA.**

United States District Court,
W.D. Tennessee,
Western Division.

Sept. 15, 2003.

Jonathan E. Scharff, Brett A. Hughes, Harris, Shelton, Dunlap, Cobb & Ryder, Memphis, TN, for Floratine Products Group, Inc.

David J. Sockol, R. Mark Bortner, Sockol & Associates PA, St. Petersburg, FL, Stephen W. Ragland, Alison S. Fowler, Bass, Berry & Sims, PLC, Memphis, TN, Keith A. Kelly, Ray, Quinney & Nebeker, Salt Lake City, UT, for Terrance Brawley, Tampa Bay Turf, Inc. dba Floratine of

Florida, REDO2X Chemical, Inc., Darin Moon, John Kelly.

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

DONALD, District Judge.

This matter is before the Court upon the motion of Defendants Terrance Brawley ("Brawley") and Tampa Bay Turf Management Inc. ("TBT") to dismiss Floratine Products Group's Inc. ("Plaintiff") Complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure. Defendants argue that this Court does not have jurisdiction over their persons with respect to Plaintiff's claims and that this is an inconvenient forum. Plaintiff argues that there is personal jurisdiction over Defendants, because they have minimum contacts with the state. This Court has jurisdiction over the claim pursuant to 38 U.S.C. § 1367. For the following reasons, the Court denies Defendant's motion to dismiss.

## I. BACKGROUND [1]

Plaintiff is a Tennessee corporation that manufactures and sells chemical products to treat turf grass. It is located in Shelby County, Tennessee and employs approximately twenty-three employees. Plaintiff retains about thirty-four distributors and agents as independent contractors to market and sell its products throughout the United States. Floradox, one of Plaintiff's products, is a turf chemical marketed exclusively through Plaintiff and its agents.

Defendant Terrance Brawley is the President and sole owner of Defendant TBT. On or about April 3, 1991, TBT and Plaintiff allegedly entered into a distributor agreement, by which TBT distributed Plaintiff's products over a designated area of Florida. Brawley bought Plaintiff's stock in 1991 and retains approximately 3.6% of outstanding shares to date. Braw-

ley was allegedly on Plaintiff's Board of Directors roughly two-thirds of the time between 1991 and 2002, including the 1999–2000 and 2001–2002 terms.

Plaintiff and Defendant Brawley entered into Confidentiality/Non–Disclosure Agreements on or about October 21, 1998 and again on October 16, 1999. As a part of the agreements, Brawley agreed to keep confidential certain information of Plaintiff's, only to be used for the purpose of his business relationship with Plaintiff. The Confidentiality Agreements provide that any legal proceeding that relates or arises under the agreements shall be filed in a court of competent jurisdiction located in Shelby County, Tennessee.

Plaintiff claims that Defendants breached the terms of the Confidentiality Agreements and diverted a corporate opportunity from Plaintiff. Generally, Plaintiff alleges that TBT sold a version of Floradox, although Plaintiff had exclusive rights to market and sell Floradox technology in the Florida markets. Plaintiff bases its allegations on the July 2002 statement of Kevin Cavanaugh, a golf course superintendent. Mr. Cavanaugh allegedly notified Plaintiff's employee that he had bought a less expensive, generic version of Floradox from TBT, though TBT had allegedly asked Mr. Cavanaugh not to tell Plaintiff that it was a generic version. Plaintiff also claims that Brawley violated his fiduciary duty to Plaintiff, which arose under his position on the board of directors.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(2) permits dismissal of a claim for lack of jurisdiction over the person. In considering a motion to dismiss, "the court must construe the complaint in a light most

---

1. Facts are taken from Plaintiff's Complaint.

favorable to the plaintiff, and accept all of [the] factual allegations as true." *Bird v. Parsons,* 289 F.3d 865, 871 (6th Cir.2002). Absent an evidentiary hearing on the issue of personal jurisdiction, the plaintiff "need only make a prima facie showing of jurisdiction." *Id.* (quoting *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 887 (6th Cir.2002)). A prima facie showing of jurisdiction may be established based upon the plaintiff's pleadings and affidavits. *Bridgeport Music, Inc. v. Agarita Music, Inc.,* 182 F.Supp.2d 653, 657 (M.D.Tenn. 2002).

## III. ANALYSIS

### A. Personal Jurisdiction

█ Defendants argue that insufficient contacts exist with the forum state to allow the Court to exercise personal jurisdiction over Defendants because TBT is a corporation headquartered and doing business in Florida. When analyzing whether a court has personal jurisdiction over a defendant in a diversity action, it is "well-settled" that the court applies the jurisdictional law of the forum state. *Poyner v. Erma Werke GmbH,* 618 F.2d 1186, 1187 (6th Cir.1980). Accordingly, the Court looks to Tennessee state law to determine if the Court has personal jurisdiction over Brawley and TBT. The Tennessee long arm statute reads:

> (a) Persons who are nonresidents of Tennessee ... and cannot be personally served with process within the state are subject to the jurisdiction of the court of this state as to any action or claim for relief arising from: ... (5) Entering into a contract for services to be rendered or for materials to be furnished in this state.

Tenn.Code Ann. § 20–2–214(a)(5) (2003). Although this statute reaches broadly, it must be applied in a manner that comports with the Due Process Clause of the Fourteenth Amendment. *Id.; Reynolds v. Int'l Amateur Athletic Fed'n,* 23 F.3d 1110, 1115 (6th Cir.1994), cert. denied, 513 U.S. 962, 115 S.Ct. 423, 130 L.Ed.2d 338 (1994); *Procter & Gamble Cellulose Co. v. Viskoza–Loznica,* 33 F.Supp.2d 644, 660 (W.D.Tenn.1998).

█ Before a defendant can be subjected to *in personam* jurisdiction, due process requires a defendant to have had "minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Poyner,* 618 F.2d at 1190 (citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Particularly relevant to this case, the Tennessee Supreme Court has held that "the physical presence of the defendant or its agent is 'not necessary' for the transaction of business to serve as a minimum contact." *Nicholstone Book Bindery, Inc. v. Chelsea House Publ'ers,* 621 S.W.2d 560, 563 (1981) (citing *S. Mach. Co., Inc. v. Mohasco Indus., Inc.,* 401 F.2d 374, 382 (6th Cir.1968)). Instead, the "crucial factor" in determining whether a defendant may be subjected to personal jurisdiction is whether its contacts indicate that the defendant "purposefully availed itself of the privilege of carrying on activities to secure goods from a manufacturer and seller located within the state." *Id.*

In *Nicholstone,* the Tennessee Supreme Court found that even a defendant that had no physical contact with Tennessee could be subjected to personal jurisdiction in the State's courts. In that case, the parties met at a trade meeting in Atlanta, Georgia where they discussed establishing a business relationship. *Id.* at 561. The defendant later sent a purchase order from its office in New York to plaintiff's office in Tennessee. *Id.* Subsequently, the particulars of the purchase order were negotiated via telephone and mail communications and a contract was formed. *Id.* Plaintiffs

undertook several customized actions in order to fill defendant's purchase order. *Id.* Plaintiff also sent a salesman to New York to discuss details of the transaction. *Id.* at 563.

The Court found that it had jurisdiction because 1) defendant made a purposeful choice to enter into a business relationship with a Tennessee resident, 2) the business relationship was mutually beneficial to both parties, 3) the business relationship began as a result of a purchase order sent from defendant in New York to plaintiff in Tennessee, and 4) the contract "provided for a customized product including the manufacture of specialized goods," so it was foreseeable that economic consequences would arise in Tennessee out of the business transaction. *Id.* at 563–64. Accordingly, the Court held that exercising personal jurisdiction over the New York defendant was proper. *Id.* at 566.

The situation in this case seems substantially similar to *Nicholstone.* Defendants made a purposeful choice to enter into a business relationship with Plaintiff, a Tennessee corporation. Defendants signed multiple contracts to that end, including the Confidentiality and Distribution Agreements. *See* Compl. Ex. 1–3. The business relationship was mutually beneficial to Plaintiff and both Defendants, and the relationship began as a result of the Distribution Agreement sent from Defendants in Florida to Plaintiff in Tennessee. Compl. Ex. 1. From the contract alone, it was foreseeable that economic consequences would arise in Tennessee out of the business transaction.

Traditional notions of fair play and substantial justice are not offended in requiring Defendants to defend their claim in Tennessee. Tennessee has a substantial interest in protecting the contracts upon which its ᐧcitizens rely, especially when those contracts create continuing relationships. *J.I. Case Corp. v. Williams,* 832

S.W.2d 530, 533 (Tenn.1992). Under *Nicholstone,* the Court finds these contacts sufficient for the Court constitutionally to exercise personal jurisdiction over Defendants.

**B.  *Forum Non Conveniens***

■ Defendants also argue that the case should be dismissed upon the doctrine of *forum non conveniens.* The doctrine has only a limited continuing vitality in federal courts. "If the more convenient forum is another federal court, since 1948 the case can be transferred there under [28 U.S.C.] § 1404(a) and there is no need for dismissal." Wright, Miller & Cooper, 15 Federal Practice & Procedure § 3828, at 278–79 (2d ed.1986). The doctrine is used most often when a foreign country is the alternate forum. *Id.* at 279. The situation must be overwhelmingly inconvenient to deprive the plaintiff of the chance to proceed in a forum of his choosing. *Dowling v. Richardson–Merrell Inc.,* 727 F.2d 608, 613 (6th Cir.1984). Defendants have not shown sufficient facts to prove that Tennessee would be such an inconvenient forum as to force the Plaintiff to try its case in Florida. Accordingly, the Court **DENIES** Defendants' motion to dismiss.

**IV.  CONCLUSION**

Since Plaintiff has shown that Defendants have minimum contacts to the forum, and the forum is not inconvenient, Defendants' motion to dismiss is DENIED.