SWIFT & COMPANY, PLAINTIFF IN ERROR, *v.* STATE OF TENNESSEE, *et al.*, DEFENDANT IN ERROR.*

(*Knoxville,* September Term, 1932.)

Opinion filed November 26, 1932.

*As to peddlers and other itinerant vendors, see 19 R. C. L., 969, 970; 21 R. C. L., 181, 182; R. C. L., Perm. Supp., p. 5028.

LEE F. MILLER, for plaintiff in error.

J. E. O'DELL, JR., for defendant in error.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This suit was brought, more than thirty days after payment under protest, by Swift & Company, distributors of cured and fresh meats, with a branch at Johnson City from which distribution is made in that and adjacent towns and counties, to recover a privilege tax collected under a provision of the Revenue Act of 1927,

set out under the sub-head "Peddlers," reading as follows:

"Each person, firm or corporation engaged in the business of running a wagon, truck, auto or other vehicle, and who sells and delivers candy, cigars, cigarettes and tobacco, fruits and produce, where it is not produced or raised by the vendors or seller, or merchandise at wholesale is hereby declared to be a wholesale peddler, and as such shall pay for each wagon, truck, auto or vehicle in each county, per annum—$100."

The trial court denied recovery, holding (1) that the remedy was barred by the thirty day limitation contained in Chapter 44 of the Acts of 1873 (Shans. Code 1061, Code of 1932, 1792); and (2) that under the facts shown by the stipulation on which the case was tried the plaintiff was a peddler within the meaning of the law.

It is conceded here that the thirty day limit does bar recovery of the State tax, but insisted that the statute invoked does not apply to the County tax. This distinction is properly taken.

While our reported decisions do not appear to have disposed of this precise question directly, in a number of cases this Court has incidentally and inferentially recognized this distinction, and treated this Act of 1873 as having application to State revenue only.

Note 4, page 729 of Shannon's Code, Vol. 1, following Code Chap. 14, which incorporates the Act of 1873, reads as follows: "The statute compiled in this chapter relates only to revenue due the State, and does not embrace revenue due counties and cities. *Railroad* v. *State*, 8 Heisk., 803-806; *Saunders* v. *Russell*, 10 Lea, 299, 300; *Nashville* v. *Smith*, 2 Pickle, 213, 217, 218; *Railroad* v. *Williams*, 17 Pickle, 146, 148; *Bank* v. *Memphis*, 8 Cates, 647; *Railroad* v. *Marion Co.*, 12 Cates, 353." The later

case of *Briscoe* v. *McMillin,* 117 Tenn., 115, is to the same effect.

Consideration of the act as a whole confirms this view. Not only does it purport in terms to deal with "the collection of revenue due the State" only, but the provisions for payment into the "State Treasury," for notice to the State "Comptroller," and for the refund to be made by the "Comptroller," all relate to State revenue necessarily.

The following quotation from the stipulation details the course of business done by plaintiff which the trial court has held to constitute peddling within the meaning of the Act:

"It has about six hundred customers, with whom it has an agreement to sell and deliver its products. It delivers, under these agreements, such quantities of its products day by day as the needs of the merchants may require. In other words, the exact amount of its products which the merchants demand day by day is not determined in advance. It does not sell and deliver products from its trucks to any concern excepting its own customers, but by agents, travelling salesmen and by telephone it works out a territory for many customers, and when a new customer is obtained, plaintiff meets his requirements by daily delivery from its trucks, and/or by express, parcel post and freight shipments. This also applies to all other customers. Plaintiff has a good many customers who call at its office in Johnson City, over the telephone and in person, or by representatives, and give plaintiff their orders for delivery.

"To sum up, plaintiff is engaged in the business of manufacturing and preparing meats and by-products thereof and other food products, and other necessary ingredients, making delivery by truck in quantities to

meet the daily requirements of the retail stores with whom plaintiff has agreements to furnish its products, and plaintiff does not go, with its truck, from place to place, to sell any of its products except to those with whom it has agreements to buy its products, and to whom it has agreed to furnish its products. Its representatives do not go from store to store and sell or offer to sell its products in small quantities to different persons, but these sales are in varying amounts to meet the daily needs and requirements of its regular customers. Of course the object of the sales and delivery is not in pursuance of any scheme or plan to evade payment of any license.

"In other words, one truck, known as the general delivery truck, delivers meat and other products on orders received by the Johnson City office of Swift and Company, from the customers, either by telephone or mailed in by its travelling salesmen. This refrigerator service truck is loaded with frozen meats, and a detailed memorandum is prepared showing just exactly what is loaded into the truck, as to variety and quantity or products; and the driver of the truck constitutes plaintiff's salesman. He travels the territory with this refrigerator truck and calls upon merchants and solicits written orders for specific merchandise, with a description as to the character of the merchandise, with weights and prices filled in on order forms with which he is supplied. This order is signed by the retail merchant. Then the salesman goes to his truck, and if it happens that he has the specific merchandise on hand, he removes from the truck the merchandise so ordered and purchased and necessary to fill the order and carries said merchandise back into the store of the retail merchant and delivers it without weighing it upon the merchant's scales, and collects

the money, if it is a c. o. d. purchase and sale, or reports the sale to the office of Swift and Company at Johnson City, Tenn., and the customer is mailed a bill therefor. The driver or salesman leaves a copy of the invoice with the retail merchant when he delivers the goods. The contents of the truck not delivered are checked over, and if there is anything short, then same is charged to the driver and he becomes liable for the shortage, if any is thus created. The driver is the salesman only to the extent and in the manner above mentioned.''

■ A review of the authorities indicates that the distinctive feature of peddling is the concurrence of selling and delivering. *Ballou* v. *State,* 87 Ala., 144, 6 So. 393; *Stamford* v. *Fisher,* 140 N. Y., 187, 35 N. E., 500. An essential element is the carrying of merchandise for sale from place to place and the making of sales and deliveries therefrom at the same time and place.

Bouvier defines peddlers as, ''persons who travel about the country with merchandise for the purpose of selling it.'' The following terse definition is from a headnote in *State* v. *Lee,* 113 N. C., 681, 37 Am. State R., 649: ''A peddler is an itinerant vendor of goods who sells and delivers the identical goods he carries with him.'' In *Hewson* v. *Englewood,* 5 N. J. L., 522, 21 L. R. A., 733, after reviewing and distinguishing authorities holding that a salesman who solicits orders for later delivery is not a peddler, the Court said: ''The rule to be drawn from the reported cases is that, to subject a person to the penalties denounced against unlicensed hawkers, peddlers, and itinerant vendors of merchandise, it must be shown that he carries his goods with him for sale, or has them sent from place to place, and disposes of them as he travels.'' The ultimate distinctive test appears to be,— does the seller carry with him the goods he sells? So,

conversely, it is said in *Ex parte Taylor,* 58 Miss., 478, that a, "commercial traveller is not a 'peddler,' because he does not carry with him the goods sold."

Now with this test in mind, an analysis of the stipulation shows clearly that the Company "sells and delivers its products to retail stores," etc. Are these sales and deliveries made contemporaneously? Reading further, "it delivers . . . such quantities of its products (and, of course, such specific articles) day by day as the needs of the merchants may require. In other words, the exact amount (or nature) of its products which the merchants demand day by day is not determined in advance." This can mean nothing else than that when and as the refrigerator truck calls from place to place deliveries are made, not of purchases previously contracted for, but of goods the amount, nature and price of which is then and there determined, upon the selection and choice of the buyer then made, and deliveries in accordance therewith are then made from the stock carried,—except in any case in which the goods desired are not in the truck stock, when an order is taken therefor. It appears that it is only when the goods desired by the purchaser called on are not to be found on the loaded truck that day, that orders for future delivery are taken. We think it clear that the driver is engaged in selling and delivering at one and the same time, and the fact that some orders are taken for future delivery, both by the driver-salesman, and by telephone or mail from the branch office directly, does not operate to take the case out of the peddler classification as heretofore defined.

Counsel for the Company strongly stress the fact shown by the stipulation (1) that only regular and previously arranged for customers are visited, and (2) that the sales are not of that small and cheap retail character

commonly associated with the term "peddling," but in substantial quantities to merchants.

In a number of reported cases it has been held that the fact that the vendor sold only to regular customers is not material. In *Davis* v. *Mayor*, 64 Ga., 128, it was said that one may be a "peddler" although he supplies the same customers in a single city regularly and continuously, as a butcher who slaughters cattle, and cutting up the meat delivers it to buyers from his cart. And in *City of Chicago* v. *Bartes*, 100 Ill., 61, the Court said, "nor can it matter that appellee has regular customers to whom he daily sold his milk."

That the sales here made are not of the petty class commonly carried about by peddlers, is immaterial since the language of the act expressly deals with the "wholesale peddler" selling to retail merchants as in this case. This language was doubtless used to extend the classification of "peddlers" beyond the definition of peddle frequently given as, "to sell by retail in very small quantities."

It results that the judgment must be affirmed.