Jimmie Horn HOLLOWAY, Appellant,

v.

PUTNAM COUNTY, Tennessee; and
Mayor and Board of Aldermen of
Monterey, Tennessee, Appellees.

Supreme Court of Tennessee.

Feb. 9, 1976.

Cameron & Jared, Cookeville, for appellant.

Aron P. Thompson, Cookeville, Griffith & Stokes by Ogden Stokes, Nashville, for appellees.

## OPINION

HENRY, Justice.

This is a suit to recover city and county ad valorem property taxes paid under protest. The Chancellor sustained a motion made pursuant to Rule 12.02 Tenn.R.Civ.P. and dismissed the action.

### I.

Taxpayer owned certain real estate located in Monterey, Putnam County, Tennessee, which she had agreed to sell to certain individual purchasers but for the ultimate use and benefit of a Cookeville bank which contemplated its use as the site of a branch office. As a condition of the conveyance grantees demanded that all property taxes be paid. Pursuant to this demand, and in order to complete the transaction, and under an alleged "economic coercion" she paid the taxes due Monterey for the years 1936 through 1961, and Putnam County for the years 1937 through 1961. Payment was made, under protest, on 9 May 1972.

It is alleged in the complaint, filed on 2 May 1973, that on or about 16 November 1972, approximately six months after payment, the Chancery Court at Cookeville declared these taxes to be "invalid, unenforceable and uncollectible". The complaint, however, does not contain a copy of any such decree nor is there any substantiation of this allegation.

By amendment to the complaint, it is asserted that the taxes were uncollectible because:

a. No process had ever been served on the prior owner of the property.

b. No notice had ever been published as required by Sec. 67–2001 T.C.A.

c. Collection of the taxes was barred by Sec. 67–2010 and/or 67–1326, T.C.A.

d. Defendants were guilty of laches.

The motion of the defendants, Putnam County, asserts that the suit "was filed too late, being more than thirty (30) days after taxes are paid, and more than six (6) months after taxes are paid, as provided by T.C.A. § 67–2305." Monterey asserts the same defense but relies upon § 67–2313 for its 30-day suit institution rule. The Chancellor correctly treated this as a Rule 12.-02(6) motion.

### II.

We are presented with an anomalous situation in that the Chancellor did not address the issue raised by the pleadings, viz., whether the suit was barred by the statute

of limitations. Instead, his action in sustaining the motion to dismiss was predicated upon findings that may be summarized as follows:

a. That the taxes were assessed against plaintiff's property; that they were unpaid; and that payment was made under protest.

b. That the complaint contained no allegation that the taxes were illegal or void—simply that they were paid under compulsion and duress.

c. That she was required to pay the taxes in order to close the sale.

d. That there was no allegation that the taxes were not due and owing to the respective defendants.

e. That there was no allegation that either defendant placed her under duress.

f. That the complaint does not specify how or why the taxes were erroneously or illegally collected.

g. That the prior decree of the court dismissed only those taxes which had not been paid at the time of the dismissal, at which time plaintiff had already paid her taxes.

h. That plaintiff did not pay the taxes under duress.

These findings by the Chancellor form the basis of the assignments in this Court, but their resolution does not reach the issues raised in the trial court and discussed in brief and oral argument before this Court. We, therefore, address these issues.

III.

The statutory remedy for the recovery of erroneous tax payments, has its origin in Chapter 44 of the Public Acts of 1873, and appears in the Code as § 67–2301 et seq., T.C.A. In its original form it was "an act to facilitate the collection of revenues" and "revenue due the state" (see caption of act), and had no application to county and city taxes. *Saunders v. Russell*, 78 Tenn. 293 (1882). Cities and counties were left to their common law remedies and if the tax was illegal, in the sense of being unauthorized by any law, taxpayers could pay under protest and sue for recovery. *Railroad v. Williams*, 101 Tenn. 146, 46 S.W. 448 (1898). The right to the pursuit of the common law remedy in cases involving county and city revenue was upheld in *Prescott v. City of Memphis*, 154 Tenn. 462, 285 S.W. 587 (1926). In *Swift & Co. v. State*, 165 Tenn. 256, 55 S.W.2d 267 (1932), this Court again held that the act of 1873 had no application to city and county revenue. See also *Bell v. Clay County*, 168 Tenn. 6, 73 S.W.2d 685 (1934) and *State ex rel. Anderson County v. Aycock*, 193 Tenn. 157, 245 S.W.2d 182 (1951).

By chapter 184 of the Public Acts of 1955, counties (but not cities) were brought within the statutory scheme, to a narrow and limited extent. This enactment now appears as the last paragraph of § 67–2301 T.C.A. and reads as follows:

The county court clerks of the various counties are also authorized and empowered to settle and adjust with taxpayers all errors and double assessments of county taxes erroneously or illegally collected by them and to direct the refunding of the same. Any claim for such refund by the county of taxes or revenue alleged to have been erroneously or illegally paid shall be filed with the county court clerk supported by proper proof within one (1) year from the date of payment, otherwise the taxpayer shall not be entitled to refund and said claim for refund shall be barred.

■ It was the evident purpose of this enactment to provide an efficient, expeditious and inexpensive remedy for county taxpayers who are the victims of *errors and double assessments* and, therefore, of taxes erroneously and illegally collected This is a permissive and alternative administrative remedy but is not mandatory or exclusive. It provides an unacceptable remedy for a taxpayer whose taxes are tainted with the illegality of wrongful assessments or any

form of invalidity which may not be processed on an administrative basis. See *Seagle-Paddock Pools of Memphis, Inc. v. Benson,* 503 S.W.2d 93 (Tenn.1973).

This is the only portion of the statutory scheme which has any relation to county revenue.

■ We hold that a taxpayer has two remedies for the recovery of county taxes, viz.: (1) the administrative procedure provided under § 67–2301, T.C.A. and (2) payment under protest and a common law suit for recovery. Such a suit is in the nature of an action of assumpsit for money had and received and is governed by the six-year statute of limitation as set forth in § 28–309, T.C.A. The cause of action accrues and the statute begins to run on the date of payment of taxes under protest.

■ We therefore, hold that as to the defendant, Putnam County, this suit is not barred by statute.

### IV.

The City of Monterey is in an entirely different category.

By Chapter 324, Public Acts of 1959, cities were brought within the purview of the general statutory scheme for the recovery of erroneous tax payments. This enactment, carried into the official code as § 67–2313 provides as follows:

> 67–2313. *Recovery of taxes paid municipalities.*—The provisions of §§ 67–2303—67–2308, inclusive, and of §§ 67–2310—67–2312, inclusive, shall apply to the recovery of all taxes collected by any of the municipalities of this state. In order to carry out the legislative intent that all of said sections, which now apply to the recovery of state taxes erroneously paid, be conformed to apply also to the recovery of taxes erroneously paid to municipalities, the following provisions are added:
>
> The municipal officer collecting any municipal taxes paid under protest shall pay such revenue into the municipal treasury and at the time of payment, shall give notice to the mayor and board of commissioners or other governing body of such municipality that the same were paid under protest. If it be finally determined by any court having jurisdiction of any suit brought within thirty (30) days after such payment under protest against said municipality to recover such taxes that the same were wrongfully collected as not being due from the said party to the municipality, the municipality shall refund such taxes with such interest as the court may determine to be proper, not exceeding the legal rate, and shall pay the costs of the cause. The city attorney or other legal officer of such municipality shall conduct the defense of such suit.

Section 67–2303 T.C.A., when conformed, applies to municipal revenue, and provides in clear and cogent language that the taxpayer

> (s)hall, if he conceives the same (collection) to be unjust or illegal, or against any statute or clause of the Constitution of the state, *pay the same under protest.* (Emphasis supplied).

Payment was so made in this case.

Section 67–2305 T.C.A. provides:

> The person paying said revenue may, at any time *within six (6) months* after making said payment, and not longer thereafter, sue the said officer having collected said sum, for the recovery thereof.

■ It will be noted that § 67–2313 T.C.A. requires the institution of suit within thirty days. This suit, as to Monterey, brought almost one year after payment under protest, is barred under either statute, and, accordingly will be dismissed.

### V.

We now return to the suit against Putnam County.

Again the record presents an anomalous and almost untenable situation. Putnam

County had permitted these taxes to be outstanding and unpaid for an inexcusable period of time. The record does not show the date the delinquent tax suit was filed, but we may safely surmise that these taxes ranged from ten to thirty years overdue, evidencing gross laches on the part of the county. It would be a major miracle if a substantial portion of these taxes were not barred by § 67–1323 (providing a bar to collection of ad valorem taxes and extinguishment of lien unless suit is instituted within six years after their accrual) and ·§ 67–1326 (providing for bar and release after ten years).

A motion under Rule 12.02(6) Tenn. R.Civ.P., is akin to a demurrer under former practice in that it admits all matters properly pleaded, and, therefore, is a test of the leading pleading. *Cornpropst v. Sloan*, 528 S.W.2d 188 (Tenn.1975).

Plaintiff alleges that by a former decree (in the delinquent tax suit):

> All of said alleged unpaid taxes . . . were declared invalid, unenforceable and uncollectible.

In the face of a Rule 12.02(6) motion, it is the duty of the Court to construe the complaint liberally in favor of the plaintiff. *Huckeby v. Spangler*, 521 S.W.2d 568 (Tenn.1975). Indulging this allegation such liberality and considering it in the light of the Chancellor's finding that the decree of October 31, 1972, "dismissed only these taxes . . . which remained unpaid" and that plaintiff had "already paid her taxes when the order was entered," we must construe this to mean that had plaintiff not paid her taxes less than six months prior to this decree they would have been cancelled by the Court. We cannot permit such an injustice to stand. Upon remand this phase of the controversy will be inquired into and proper evidence will be adduced.

It is the insistence of plaintiff that she was laboring under a form of duress and paid the taxes under economic coercion. If this were the only issue before the Court,

we would dispose of it on the basis of the pleadings before us; however, since this case must be remanded in the interest of justice, we remand for further consideration of the question as to whether payments were made under duress or voluntarily.

We agree with the Chancellor only as to the results he reached. The pertinent issues on remand are (1) the legality of the tax collection in the light of the then pending suit and its disposition and (2) the question of voluntary payment.

Affirmed, as to Monterey; reversed as to Putnam County and remanded.

FONES, C. J., and COOPER, HARBISON and BROCK, JJ., concur.