**IN THE COURT OF APPEALS OF TENNESSEE**

**EASTERN SECTION**

FILED

**July 24, 1997**

**Cecil Crowson, Jr.**
Appellate Court Clerk

|  |  |  |
|---|---|---|
| STEFONE McCLENDON, father of | ) | |
| DAMIEN O'SHAY MAURICE | ) | KNOX CIRCUIT |
| McCLENDON, the next of kin of | ) | |
| CYNTHIA VANESSA FRANCIS, | ) | NO. 03A01-9703-CV-00083 |
| | ) | |
| Plaintiff-Appellant | ) | |
| | ) | |
| v. | ) | HON. DALE C. WORKMAN, |
| | ) | JUDGE |
| DR. BENNETT T. CROWDER, II, and | ) | |
| EMERGENCY COVERAGE | ) | |
| CORPORATION, | ) | |
| | ) | REVERSED and |
| Defendants-Appellees | ) | REMANDED |

H. Naill Falls, Jr. and James B. Johnson, Nashville, for Appellant

James H. London and Margaret G. Klein, Knoxville, for Appellee

**O P I N I O N**

INMAN, Senior Judge

This is an action for damages for the death of Cynthia Francis allegedly caused by the malpractice of Dr. Bennett Crowder, II, an emergency room physician who was a contract physician with the defendant Emergency Coverage Corporation which had contracted with the Sweetwater Hospital[1] to operate its emergency room.

According to the complaint, Ms. Francis, who was 19 years old, on January 29 and 22, 1996, being acutely ill, presented herself at the emergency room and was twice mistakenly diagnosed as suffering from an upper respiratory disease by Dr. Crowder, who prescribed treatment accordingly, when in fact she was suffering from diabetes and was *in extremis,* shortly expiring at another hospital.

The plaintiff alleged that the medical care rendered by Dr. Crowder was reckless and constituted a gross deviation from accepted standards of professional practice.

---

[1]The Sweetwater Hospital was voluntarily dismissed.

The only allegation as to the Emergency Coverage Corporation (ECC) is as follows:

> "16. As a patient at Sweetwater Hospital, Cynthia Francis was a third-party beneficiary of the contract between Emergency Coverage Corporation and Sweetwater Hospital. Plaintiff is therefore entitled to recover compensatory damages from Emergency Coverage Corporation in the amount of at least $3,000,000.00."

The ECC filed a RULE 12.02(c) motion to dismiss for failure to state a claim, asserting that the "complaint contains a mere conclusory allegation regarding the decedent's third-party beneficiary status; even if this were the case, there are no facts indicating that EEC ever breached the underlying contract."

The sole purpose of a RULE 12.02(c) motion is to test the legal sufficiency of the complaint. *Sanders v. Vinson,* 558 S.W.2d 838 (Tenn. 1977); *Holloway v. Putnam County,* 534 S.W.2d 292 (Tenn. 1976), cited in *Dobbs v. Guenther,* 846 S.W.2d 270 (Tenn. App. 1992). This test requires this Court to take all the well-pleaded, material factual allegations as true and to construe the complaint liberally in favor of the plaintiff. *Lewis v. Allen,* 698 S.W.2d 58 (Tenn. 1985).

The trial court found that the deceased was a third-party beneficiary of the contract between EEC and Sweetwater Hospital,[2] but that the contract was not breached by ECC. The motion of ECC to dismiss was therefore granted for failure to state a claim. Whether the dismissal of ECC was proper is the sole issue on appeal.

_____

[2]In response to a motion by the plaintiff for a partial summary judgment.

2

The contract between ECC and Sweetwater Hospital provides, as pertinent here:

## AGREEMENT

This Agreement made effective the 1st day of October, 1993, by and between SWEETWATER HOSPITAL ASSOCIATION, a hospital operating in Sweetwater, Tennessee, ("Hospital"), and EMERGENCY COVERAGE CORPORATION ("ECC").

## RECITALS

A. The Hospital operates an Emergency Department, which requires physicians who have the training, experience, and qualifications necessary to practice medicine as emergency physicians.

B. The Hospital has determined that for proper and efficient operation of the Emergency Department several objectives must be met, including, 24-hour coverage, coordination of schedules and assignments, administrative ease and efficiency, consistency and uniformity in book and record-keeping, coordinated direction of non-physician personnel, and quality patient care.

C. The Hospital has determined that the proper, orderly and efficient delivery of quality emergency services can be accomplished best by entering into an exclusive coverage arrangement with ECC.

D. ECC provides independent contractor physicians to render emergency medical services at hospitals. ECC is willing to accept the responsibility of providing said physicians to render emergency medical services in the Emergency Department in accordance with recognized medical standards, the bylaws of the Medical Staff of the Hospital ("Medical Staff"), the policies and procedures of the Hospital, and the terms and conditions set forth in this agreement.

E. ECC will, at its expense, contract with Emergency Physicians ("Physicians") to render emergency medical services at Hospital. For purposes of this Agreement, the term "Physician" or "Physicians" shall mean physicians rendering emergency medical services at the Hospital by and through contractual agreements between such physicians and ECC.

F. The Hospital and ECC desire to provide a full statement of their agreement in connection with the operation of the Department during the term of this Agreement.

Accordingly, the parties agree as follows:

I. OBLIGATIONS OF ECC. ECC agrees to the following:

1. Medical Services. ECC shall provide Physicians to staff the Emergency Department and render emergency medical services twenty-four (24) hours per day, seven (7) days per week, fifty-two (52) weeks per year to all patients who present themselves in the Emergency Department, provided those patients desire treatment by said Physicians. Physicians are not responsible for any patient who presents to the Emergency Department and chooses any other

3

examination and treatment options offered by Hospital personnel. Hospital acknowledges that ECC will perform its obligations through contracts with Physicians who are independent contractors and not employees of ECC or Hospital, provided Physicians meet the requirements set forth herein with respect to qualifications.

.    .    .    .    .    .    .

The thrust of the plaintiff's argument on appeal is directed to the Contract Recital that:

" . . . ECC is willing to accept the responsibility of providing said Physicians to render emergency medical services in the Emergency Department in accordance with recognized medical standards . . . "

The argument continues that the contract was breached since ECC agreed to accept the responsibility to provide physicians to render medical services *in accordance with recognized medical standards,* and that Dr. Crowder failed to do so. Since the deceased was a third-party beneficiary of the contract, plaintiff argues that, *ipso facto,* she is entitled to damages for such breach.

The plaintiff does not allege that ECC is vicariously liable for the alleged negligence of Dr. Crowder, and it is well-settled that ordinarily a party is not liable for the negligence of an independent contractor, *Carr v. Carr,* 726 S.W.2d 932 (Tenn. App. 1986). ECC is a "staffing" company, and initially fulfilled its contractual obligations by furnishing a Medical Director and independent contractor physicians acceptable to the Hospital. The plaintiff does not allege that Dr. Crowder was incompetent or unlicensed or that ECC was negligent in presenting him to the Hospital for approval; rather, the plaintiff argues that because of the language of the Recital, ECC breached the contract when Dr. Crowder failed to render medical services in accordance with recognized medical standards.

The plaintiff also argues that the ruling by the trial court that ECC did not breach its contract with the Hospital went impermissibly beyond the scope of the RULE 12.02(c) motion, because ECC expressly agreed to be liable when its contractual physicians "failed to perform up to recognized medical standards."

4

The quoted Recital, to which we may look to ascertain the intent of the parties, 17 Am Jur Contracts, Sec. 268, recites that the physicians provided by it will render medical services "in accordance with recognized medical standards." Any act of medical malpractice resulting in injury as a proximate cause arguably falls below the recognized standard, and if the theory of the appellant is correct ECC thereby becomes liable under the Recital to any ER patient who by virtue of seeking ER treatment becomes a third-party beneficiary to the contract.[3] Did the alleged negligent acts of Dr. Crowder constitute a breach of the contract between ECC and the Hospital? We think so, in light of the language of the Recital.

The Recital[4] is the only provision of the contract which identifies the specific duties that ECC agreed to perform. It will be seen that ECC did not merely agree to provide "qualified" physicians; it agreed to provide physicians to *render services "in accordance with recognized medical standards."*

In the case at hand, we must "take it as true" that Dr. Crowder failed to "render services in accordance with recognized medical standards." We must also 'take as true' that the deceased was a third-party beneficiary of the contract between ECC and the Hospital, since there is no appeal from the holding of the trial court to that effect. The conclusion thereupon logically follows that ECC was improvidently dismissed from this case.

Reversed and remanded, with costs assessed to ECC.



William H. Inman, Senior Judge

---

[3]*Willard v. Claborn,* 419 S.W.2d 168 (Tenn. 1967) is explicative of the doctrine. A beneficiary may maintain an action in his own name against the promisor where the promise between the promisor and the promisee is made upon sufficient consideration for the benefit of the third-party beneficiary, who will be one of three types: a donee beneficiary, a creditor beneficiary, and an incidental beneficiary. The latter had no standing to sue. Presumably, the trial judge who held that the decedent was a third-party beneficiary, did so under the *creditor* theory. The appellee does not question this holding. The trial court went further, as stated, and held no breach was proved.

[4]Recitals may have a material influence in construing the contract and determining the intent of the parties, and in such respect they should, as far as possible, be reconciled with the operative clauses and be given effect. Generally if the recitals in a contract are clear and the operative part is ambiguous, the recitals govern . . . 17 Am Jur Contracts sec. 268.

CONCUR:


_____
Houston M. Goddard, Presiding Judge


_____
Don T. McMurray, Judge