# IN THE COURT OF APPEALS OF TENNESSEE,
## AT JACKSON

_____

| | | |
|---|---|---|
| **CARLOSS WELL SUPPLY CO., INC.,** | ) | Shelby County Circuit Court |
| **a/k/a CARLOSS COMPANY**, | ) | No. 92801-4 T.D. |
| | ) | |
| Plaintiff/Appellant, | ) | |
| | ) | |
| VS. | ) | C.A. No. W1998-00571-COA-R3-CV |
| | ) | |
| **HAMMETT & SONS WATER** | ) | |
| **WELL & IRRIGATION, INC.**, | ) | |
| | ) | |
| Defendant/Appellee. | ) | |
| | ) | |

**FILED**

**December 15, 1999**

**Cecil Crowson, Jr.
Appellate Court Clerk**

_____

From the Circuit Court of Shelby County at Memphis.
**Honorable James E. Swearengen, Judge**

**John S. Richbourg**,
RICHBOURG & LOWRY, Memphis, Tennessee
Attorney for Plaintiff/Appellant.

**Karen R. Cicala**, Memphis, Tennessee
Attorney for Defendant/Appellee.

OPINION FILED:

**REVERSED AND REMANDED**

**FARMER, J.**

**CRAWFORD, P.J., W.S.**: (Concurs)
**LILLARD, J.**: (Concurs)

Plaintiff Carloss Well Supply Co. ("Carloss") appeals an order of the trial court granting a motion to dismiss for lack of personal jurisdiction filed by Defendant Hammett & Sons Water Well & Irrigation, Inc. ("Hammett"). For the reasons set forth below, we reverse the ruling of the trial court.

Carloss is a Tennessee corporation that manufactures and assembles water pumps at its place of business in Memphis. Hammett is a Louisiana corporation that furnishes, sells, and installs water wells. The parties have had an ongoing business relationship since 1976. Gary Morton, an employee of Carloss, regularly traveled to Louisiana to do business with Hammett. During one such visit, Hammett ordered some water pumps from Mr. Morton. After taking the order, Mr. Morton returned to Memphis where the pumps were manufactured and assembled by Carloss according to Hammett's specifications. The pumps were then delivered to Hammett at its place of business in Louisiana. After delivery, Hammett installed the pumps and discovered that they were not operating properly. Consequently, Hammett returned the pumps to Carloss at its office in Memphis where they were repaired. Carloss then redelivered the pumps to Hammett at its place of business in Louisiana.

Carloss subsequently filed a civil warrant with the General Sessions Court of Shelby County, Tennessee alleging that Hammett had failed to pay for the aforementioned water pumps. During an appearance before the general sessions court, Hammett made an oral motion to dismiss for lack of personal jurisdiction, which was granted. Carloss appealed the matter to the Shelby County Circuit Court. Hammett then filed a motion to dismiss with the circuit court. In support of this motion, Hammett filed an affidavit executed by David Hammett[1] and the deposition of Mr. Morton. Additionally, in opposition to the motion, Carloss filed an affidavit executed by Robert McConnell.[2] Finding that it lacked personal jurisdiction over Hammett, the circuit court granted Hammett's motion to dismiss. This appeal followed.

The sole issue raised on appeal is whether the trial court erred in granting Hammett's motion to dismiss for lack of personal jurisdiction. When considering a motion to dismiss, the trial court must give a liberal construction to the plaintiff's complaint and assume the truth of the averments contained therein. *See Lewis v. Allen*, 698 S.W.2d 58, 59 (Tenn. 1985); *Holloway v.*

---

[1]Mr. Hammett is the vice-president of Hammett.

[2]Mr. McConnell is the president of Carloss.

*Putnam County*, 534 S.W.2d 292, 296 (Tenn. 1976). The trial court is not required to make findings of fact but must only determine whether the plaintiff's complaint alleges facts sufficient to survive a motion to dismiss. *See S & S Screw Mach. Co. v. Cosa Corp.*, 647 F. Supp. 600, 605 (M.D. Tenn. 1986). Because the issue in the instant case is a question of law, our review of the trial court's ruling is *de novo* with no presumption of correctness. *See, e.g., Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen and Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999); T.R.A.P. 13(d).

The United States Supreme Court has established standards for determining whether the exercise of personal jurisdiction over a nonresident defendant is allowable under the Due Process Clause of the Fourteenth Amendment. In *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), the Court stated that such an exercise of jurisdiction is appropriate when the defendant has "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Although the Court did not define the phrase "minimum contacts," it did indicate that, in some cases, a single contact with the forum state could support a finding of jurisdiction. *See id.* at 318. It also suggested, however, that "irregular" or "casual" contacts with the forum state are insufficient to serve as the basis of jurisdiction. *See id.* at 320. The Court stated that the focus of the "minimum contacts" inquiry should be the "quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." *Id.* at 319. In determining that a Delaware shoe manufacturer was amenable to suit in the state of Washington, the Court offered the following rationale:

> [T]o the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which required the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue.

*Id.*

The proper application of the "minimum contacts" test has been further explained in a number of Supreme Court cases following *International Shoe*. In *McGee v. International Life Insurance Co.*, 355 U.S. 220 (1957), the Court upheld the exercise of jurisdiction by a California

court over a Texas corporation whose only contact with the state of California was that it sold a single insurance policy to a California resident. *See id.* at 223. In concluding that the "minimum contacts" standard had been satisfied, the Court stated: "It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with [the forum state]." *Id.* In *Hanson v. Denckla*, 357 U.S. 235 (1958), the Court focused on the "quality and nature" of the contacts, holding that the trial court lacked personal jurisdiction because the nonresident defendant did not "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 253.

In addition to asking whether the nonresident defendant has "minimum contacts" with the forum state, a court must also consider those contacts in light of other factors and determine if the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316. Such factors include 1) the burden on the defendant, 2) the forum state's interest in adjudicating the dispute, 3) the plaintiff's interest in obtaining convenient and effective relief, 4) the judicial system's interest in obtaining the most efficient resolution of controversies, and 5) the shared interest of the several states in furthering fundamental substantive social policies. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). In *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102 (1987), the Court considered these five factors and held that, even if the "minimum contacts" inquiry was satisfied, the assertion of personal jurisdiction by the California court over the Japanese defendant would be unreasonable. *See id.* at 114.

The exercise of personal jurisdiction by a Tennessee court over a nonresident defendant such as Hammett is governed by section 20-2-214 of the Tennessee Code Annotated, which provides in pertinent part as follows:

> Persons who are nonresidents of Tennessee and residents of Tennessee who are outside the state and cannot be personally served with process within the state are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from:
> (1) The transaction of any business within the state;
> (2) Any tortious act or omission within this state;
> (3) The ownership or possession of any interest in property located within this state;
> (4) Entering into any contract of insurance, indemnity, or guaranty covering any person, property, or risk located within this state at the time of contracting;
> (5) Entering into a contract for services to be rendered or for materials to be furnished in this state;
> (6) Any basis not inconsistent with the constitution of this state or of the United States;

(7) Any action of divorce, annulment or separate maintenance where the parties lived in the marital relationship within this state, notwithstanding one party's subsequent departure from this state, as to all obligations arising for alimony, custody, child support, or marital dissolution agreement, if the other party to the marital relationship continues to reside in this state.

Tenn. Code Ann. § 20-2-214(a) (1994). This statute was intended to reach to the full extent allowable under the Due Process Clause of the Fourteenth Amendment and thus should be given a liberal construction. *See J.I. Case Corp. v. Williams*, 832 S.W.2d 530, 531 (Tenn. 1992); *Masada Inv. Corp. v. Allen*, 697 S.W.2d 332, 334 (Tenn. 1985); *Southland Express, Inc. v. Scrap Metal Buyers of Tampa, Inc.*, 895 S.W.2d 335, 338 (Tenn. Ct. App. 1994).

The courts of this state have applied section 20-2-214 and the "minimum contacts" test of *International Shoe* and its progeny on several prior occasions. First, in *Nicholstone Book Bindery, Inc. v. Chelsea House Publishers*, 621 S.W.2d 560 (Tenn. 1981), Nicholstone, a Tennessee corporation, agreed to perform printing and binding services at its office in Tennessee and then ship the finished product to Chelsea, a New York publisher. *See id.* at 561. In an action brought by Nicholstone against Chelsea for nonpayment under the contract, the issue became whether the Tennessee court could assert personal jurisdiction over Chelsea. *See id.* The *Nicholstone* court adopted the three part analysis of *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir. 1968), stating as follows:

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Nicholstone*, 621 S.W.2d at 562 (quoting *Mohasco*, 401 F.2d at 381). Applying these factors, the court found that Chelsea's contacts with the state of Tennessee were sufficient to subject Chelsea to the jurisdiction of the Tennessee courts. *See id.* at 566.

Additionally, in *Masada Investment Corp. v. Allen*, 697 S.W.2d 332 (Tenn. 1985), the Tennessee Supreme Court considered whether Allen, a Texas attorney, had sufficient contacts with the state of Tennessee to confer jurisdiction on the Tennessee courts. *Id.* at 333. Allen's contacts with Tennessee consisted of the following: 1) He prepared a sales contract and a warranty

deed in connection with a pending purchase of real property located in Tennessee; 2) He sent the aforementioned sales contract and warranty deed to Tennessee for execution; and 3) He participated in the closing on the property, which took place at his office in Texas. *See id.* In determining whether Allen had "minimum contacts" with the state of Tennessee, the court adopted the five factor analysis of *Shelby Mutual Insurance Co. v. Moore*, 645 S.W.2d 242 (Tenn. Ct. App. 1981). *See Masada*, 697 S.W.2d at 334. The court thus considered 1) the quantity of the contacts, 2) the nature and quality of the contacts, 3) the source and connection of the cause of action with the contacts, 4) the interest of the forum state, and 5) convenience.[3] *See id.* Applying these factors, the court found that Allen's contacts with the state of Tennessee were sufficient to satisfy the requirements of section 20-2-214(a)(6) and reversed the trial court's dismissal of the claims asserted against Allen. *See id.* at 335.

Finally, in *J.I. Case Corp. v. Williams*, 832 S.W.2d 530 (Tenn. 1992), Williams, an Arkansas farmer, met a sales representative of J.I. Case while attending the Mid-South Fair in Memphis. *See id.* at 531. During a subsequent visit by the sales representative to Williams' farm, the parties reached an agreement regarding the purchase and lease of some farm equipment. *See id.* Instruments reciting this agreement were then prepared and signed by J.I. Case in Memphis and sent to Arkansas where they were signed by Williams. *See id.* J.I. Case subsequently filed an action against Williams in a Tennessee court seeking reformation of the agreement. *See id.* The Tennessee Supreme Court upheld the trial court's assertion of personal jurisdiction over Williams, stating as follows:

> The contacts with Tennessee in the case before the Court were much more substantial than those in *Masada*. . . . The initial contact between the parties occurred at Case's equipment exhibit at the fair in Tennessee; the instruments controlling the transaction between the parties were prepared and executed by Case in Tennessee; financing for the balance due under the agreement was furnished by a company located in Tennessee; the agreement executed by the parties contemplated that payments due under the agreement would be made in Tennessee; and parts and labor for the repair and maintenance of the equipment under the warranty agreement were to be furnished in or from Tennessee. . . . These significant contacts by Williams with Tennessee relating directly to the underlying cause of action form an adequate basis for the assertion of jurisdiction. These contacts resulted in a continuing relationship between Williams and the State and are such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice and therefore

---

[3]Before adopting these five factors, the court first noted the three factor analysis set forth in *Mohasco*. *See Masada*, 697 S.W.2d at 334. It then agreed with the conclusion of the court in *Moore* that the reach of section 20-2-214 had been extended with the addition of subsection (a)(6) and that, consequently, the *Mohasco* test was now too restrictive. *See id.*

does not violate the Due Process Clause of the United States Constitution.

***Id.*** at 533.

We now consider whether, under the unique facts of the instant case, the trial court could have asserted jurisdiction over Hammett pursuant to section 20-2-214. Hammett's contacts with the state of Tennessee relative to the claim asserted by Carloss are as follows: (1) Hammett ordered water pumps from Carloss, a Tennessee corporation, to be manufactured and assembled in Tennessee; (2) Hammett returned the water pumps to Carloss at its office in Tennessee to be repaired; and (3) Hammett made payments to Carloss at its office in Tennessee. Under subsection (a)(6) of section 20-2-214, a Tennessee court may assert personal jurisdiction over a nonresident defendant with respect to any action or claim for relief arising from "[a]ny basis not inconsistent with the constitution of this state or of the United States." Tenn. Code Ann. § 20-2-214(a)(6) (1994). This provision requires us to consider whether there are "minimum contacts" between Hammett and the state of Tennessee such that the maintenance of an action against Hammett in a Tennessee court does not offend "traditional notions of fair play and substantial justice." ***International Shoe***, 326 U.S. at 316. As stated above, this inquiry involves the consideration of five factors, including (1) the quantity of the contacts, (2) the nature and quality of the contacts, (3) the source and connection of the cause of action with the contacts, (4) the interest of the forum state, and (5) convenience. ***See Masada***, 697 S.W.2d at 334.

With respect to the first of the factors listed above, we note that Hammett's contacts with the state of Tennessee are few in number. It appears, however, that the number of Hammett's contacts are at least comparable to if not greater than those of the defendants in ***Nicholstone***, ***Masada***, and ***J.I. Case***, all of which involved only a single contract or transaction. We also find that the nature and quality of Hammett's contacts with the state of Tennessee are substantial in that the parties have maintained an ongoing business relationship since 1976. As noted above, the parties in ***Nicholstone***, ***Masada***, and ***J.I. Case*** did not have an ongoing business relationship but instead were involved in a single contract or transaction. Furthermore, the claim asserted by Carloss arises out of a contract under which Hammett agreed to purchase some water pumps manufactured and assembled by Carloss in Tennessee. Additionally, given that Carloss is a Tennessee corporation doing business in this state, we think that the state of Tennessee has an interest in providing a forum for the adjudication of Carloss' claim. Finally, we recognize that Hammett would be

inconvenienced if required to defend a lawsuit in Tennessee. Likewise, Carloss would be inconvenienced if forced to assert its claim in a Louisiana court. With respect to this factor, we think it is relevant that Hammett has never traveled to Tennessee to conduct its business[4] and that many of the potential witnesses in the instant case are located in Louisiana. Considering each of the five factors discussed above in light of the rulings of our supreme court in *Nicholstone*, *Masada*, and *J.I. Case*, we conclude that there are "minimum contacts" between Hammett and the state of Tennessee such that the exercise of personal jurisdiction by the courts of this state does not offend "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316. Consequently, we hold that the trial court could have asserted jurisdiction over Hammett pursuant to subsection (a)(6) of section 20-2-214.

Based on the foregoing, we find that the exercise of personal jurisdiction over Hammett by the courts of this state is appropriate under section 20-2-214(a)(6).[5] We therefore conclude that the trial court erred in granting Hammett's motion to dismiss Carloss' claim. In light of this conclusion, the ruling of the trial court is reversed and the cause is remanded for further proceedings consistent with this opinion. Costs on appeal are taxed to Hammett, for which execution may issue if necessary.

_____
FARMER, J.


_____
CRAWFORD, P.J., W.S.


_____
LILLARD, J.

---

[4]As noted in *Masada*, "the absence of physical contacts will not defeat *in personam* jurisdiction where a commercial actor purposefully directs his activities toward citizens of the forum State and litigation results from injuries arising out of or relating to those activities." *Masada*, 697 S.W.2d at 334 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S.462, 472 (1985)).

[5]In light of this finding, we find it unnecessary to discuss whether, under the facts of the case at bar, jurisdiction might also exist under other subsections of section 20-2-214.