# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs October 21, 2015

## LISA LYNN ODOM, ET AL v. CLAIBORNE COUNTY, TENNESSEE, ET AL

### Appeal from the Circuit Court for Claiborne County
### No. 12-CV-1006     Jon Kerry Blackwood, Judge[1]

---

### No. E2014-02328-COA-R3-CV – Filed March 29, 2016

---

An "affidavit of complaint" was issued against Lisa Odom for custodial interference. Deputies from the Claiborne County Sheriff's Office visited Ms. Odom for the purpose of taking custody of her child and returning her to Ms. Odom's ex-husband, Scott Odom. Ms. Odom objected to the removal of her child, and William Phipps, Ms. Odom's father, asked to see a warrant prior to the removal of the child. After a prolonged standoff, the deputies called Assistant District Attorney General Amanda Sammons, who explained over a speakerphone that a warrant was not necessary because there was a court order for Ms. Odom to return the child to Mr. Odom. During the course of the phone call, Ms. Odom overheard General Sammons use derogatory language when referring to her. Ms. Odom was ultimately arrested for custodial interference. Nearly a year later, Ms. Odom and Mr. Phipps (collectively the plaintiffs) filed a complaint against General Sammons alleging intentional infliction of emotional distress and civil conspiracy. General Sammons filed a motion to dismiss, which the trial court granted. The plaintiffs appeal. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., AND JOHN W. MCCLARTY, J., joined.

Herbert S. Moncier, Knoxville, Tennessee, for the appellants, Lisa Lynn Odom and William Phipps.

Herbert H. Slatery III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; and Mary M. Bers, Senior Counsel, Nashville, Tennessee, for the appellee, Amanda Sammons.

---

[1] Sitting by designation.

# OPINION

## I.

The Odoms were divorced on December 2, 2008. One child was born to their union. Following their divorce, Ms. Odom and Mr. Odom shared custody of the child. On July 12, 2012, Bill Baumgardner, a sergeant of the Claiborne County Sheriff's Office, executed an affidavit of complaint against Ms. Odom for custodial interference, pursuant to Tenn. Code Ann. § 39-13-306 (2010). The affidavit of complaint states as follows:

> Affiant, Sgt. B. Baumgardner, found through an investigation that [Ms. Odom] and Scott Odom share custody of a minor child. Affiant learned that [Ms. Odom] and Scott Odom share custody of minor child by guidelines that were set forth by a court order. It was found that [Ms. Odom] did commit the offense of custodial interference when she removed said minor child from the state of Tennessee and into the state of California, thus restricting Scott Odom from his entitled, court ordered visitation time with said minor child.

Thereafter, on August 7, 2012, deputies from the Claiborne County Sheriff's Office went to the home of William Phipps, where Ms. Odom was living, to take custody of the child. One of the deputies entered Mr. Phipps' home, took custody of the child, and gave the child to Mr. Odom, who had accompanied the deputies. Ms. Odom protested the removal of the child, and her father requested that the deputies show them a warrant. After speaking with Mr. Phipps and Ms. Odom for approximately two hours, the deputies called General Sammons and put her on a speakerphone. General Sammons explained over the phone that a warrant was not necessary because there was a court order for Ms. Odom to return the child to Mr. Odom. At some point while General Sammons was on speakerphone, Ms. Odom overheard General Sammons call her a "jerk," refer to her as a "troublemaker," and say, "Take that bitch to jail." Ms. Odom was subsequently handcuffed and taken to the Claiborne County jail. The custodial interference criminal charge against Ms. Odom was eventually dismissed.

On August 5, 2013, the plaintiffs filed a complaint[2] against General Sammons alleging (1) intentional infliction of emotional distress and (2) civil conspiracy in

---

[2] The complaint also listed Mr. and Ms. Odom's minor child and the State of Tennessee as plaintiffs. However, the State Attorney General never authorized Ms. Odom and Mr. Phipps to bring this action in the name of the State. In addition, the complaint named Mr. Odom,

2

violation of Tenn. Const. art. I, §§ 7, 8. On September 6, 2013, General Sammons filed a motion to dismiss pursuant to Tenn. R. Civ. P. 12.02(6). On October 1, 2014, the plaintiffs filed a motion to amend their complaint to add allegations that General Sammons' secretary had a "social relationship" with Mr. Odom and that General Sammons "prosecuted multiple prior criminal proceedings instituted by [Mr.] Odom that were all dismissed." The trial court entered an order on October 6, 2014, allowing the amendments.

On October 23, 2014, the trial court filed its findings and conclusions. With respect to the intentional infliction of emotional distress claim against General Sammons, the trial court stated:

> Because mere insults do not rise to the level of outrageous conduct required for an intentional infliction of emotional distress claim and because the Complaint fails to allege anything concerning General Sammons beyond the allegation that she called Ms. Odom a "jerk," "trouble maker," and said "take the bitch to jail," the [p]laintiff[s] have failed to state a claim for intentional infliction of emotional distress against General Sammons.

As for the civil conspiracy charge against General Sammons, the trial court concluded,

> Tennessee courts have continuously determined that Tenn. Const. [a]rt. I, § 17 does not create a substantive right, only a "mechanism by which a citizen may redress grievances." **State ex rel. Moncier** [**v. Jones**], [No. M2012-01429-COA-R3-CV], 2013 WL 2492648, [at] *6 (Tenn. Ct. App. [Nov. 13,] 2013); see **Staples v. Brown**, 85 S.W. 254 (Tenn. 1905). In **State ex rel. Moncier**, the Court specifically declined to hold that Article [I], Section 17 creates a substantive cause of action to enforce other constitutional provisions or laws. **Id**. This [c]ourt declines to reject this long standing rule in

---

Claiborne County, Sheriff Baumgartner, multiple deputies from the Claiborne County Sheriff's Office, and Arthur J. Gallagher, Risk Management Services, Inc. as defendants. General Sammons is the only defendant named in either the original complaint or the first amended complaint who is a party to this appeal. Accordingly, we will only discuss the allegations pertinent to General Sammons.

Tennessee that there is no implied cause of action based on violations of the Tennessee Constitution.

Further, assuming that General Sammons was acting in conspiracy to violate [p]laintiffs' [c]onstitutional rights, she is entitled to a prosecutor's immunity, as an assistant district attorney general, from damages arising from her initiation and pursuit of a prosecution. *See **Simmons v. Gath Baptist Church***, 109 S.W.3d 370 (Tenn. Ct. App. 2003); ***Willett v. Ford***, 603 S.W.2d 143 (Tenn. Ct. App. 1979). Therefore, [p]laintiff[s] have failed to state a claim for which relief can be granted for civil conspiracy against General Sammons.

Accordingly, the trial court granted General Sammons' motion to dismiss.

## II.

The plaintiffs filed a notice of appeal on November 21, 2014, raising the following issues:

Whether the trial court erred by granting General Sammons' Tenn. R. Civ. P. 12.02(6) motion to dismiss the plaintiffs' claims of intentional infliction of emotional distress.

Whether the plaintiffs have a cause of action for injuries caused by General Sammons as a state actor for violating Ms. Odom's rights provided her by Tennessee's Constitution.

Whether General Sammons has absolute prosecutorial immunity.

Whether General Sammons is individually liable.

## III.

On the issue of a Tenn. R. Civ. P. 12.02(6) motion to dismiss, we are guided by the following principles as articulated by the Supreme Court:

A Rule 12.02(6) motion challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or

4

evidence.  *Highwoods Props., Inc. v. City of Memphis*, 297 S.W.3d 695, 700 (Tenn. 2009); *Willis v. Tenn. Dep't of Corr.*, 113 S.W.3d 706, 710 (Tenn. 2003); *Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999); *Sanders v. Vinson*, 558 S.W.2d 838, 840 (Tenn. 1977)).  The resolution of a 12.02(6) motion to dismiss is determined by an examination of the pleadings alone.  *Leggett v. Duke Energy Corp.*, 308 S.W.3d 843, 851 (Tenn. 2010); *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002); *Cook ex rel. Uithoven v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 938 (Tenn. 1994); *Cornpropst v. Sloan*, 528 S.W.2d 188, 190 (Tenn. 1975).  A defendant who files a motion to dismiss " 'admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action.' "  *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 854 (Tenn. 2010) (quoting *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 516 (Tenn. 2005)); *see Edwards v. Allen*, 216 S.W.3d 278, 284 (Tenn. 2007); *White v. Revco Disc. Drug Ctrs., Inc.*, 33 S.W.3d 713, 718 (Tenn. 2000); *Holloway v. Putnam Cnty.*, 534 S.W.2d 292, 296 (Tenn. 1976).

In considering a motion to dismiss, courts " 'must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.' "  *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31-32 (Tenn. 2007) (quoting *Trau-Med*, 71 S.W.3d at 696); *see Leach v. Taylor*, 124 S.W.3d 87, 92-93 (Tenn. 2004); *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997); *Bellar v. Baptist Hosp., Inc.*, 559 S.W.2d 788, 790 (Tenn. 1978); *see also City of Brentwood v. Metro. Bd. of Zoning Appeals*, 149 S.W.3d 49, 54 (Tenn. Ct. App. 2004) (holding that courts "must construe the complaint liberally in favor of the plaintiff by . . . giving the plaintiff the benefit of all the inferences that can be reasonably drawn from the pleaded facts").  A trial court should grant a motion to dismiss "only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief."

> *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 857
> (Tenn. 2002); *see Lanier v. Rains*, 229 S.W.3d 656, 660
> (Tenn. 2007); *Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn.
> 1999); *Pemberton v. Am. Distilled Spirits Co.*, 664 S.W.2d
> 690, 691 (Tenn. 1984); *Fuerst v. Methodist Hosp. S.*, 566
> S.W.2d 847, 848 (Tenn. 1978); *Ladd v. Roane Hosiery,
> Inc.*, 556 S.W.2d 758, 759–60 (Tenn. 1977). We review the
> trial court's legal conclusions regarding the adequacy of the
> complaint de novo. *Brown,* 328 S.W.3d at 855; *Stein,* 945
> S.W.2d at 716.

*Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011).

**IV.**

The plaintiffs have alleged that General Sammons is guilty of intentional infliction of emotional distress. "The elements of an intentional infliction of emotional distress claim are that the defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff." *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn. 2012) (citing *Lourcey v. Estate of Scarlett*, 146 S.W.3d 48, 51 (Tenn. 2004)); *Leach v. Taylor*, 124 S.W.3d 87, 92 (Tenn. 2004); *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). When determining whether particular conduct is so outrageous that it is not tolerated by civilized society, "the test often used by our courts is the one found in the Restatement (Second) of Torts § 46 comment d (1964)." *Alexander v. Inman*, 825 S.W.2d 102, 105 (Tenn. Ct. App. 1991). Comment d states that,

> [t]he cases thus far decided have found liability only where
> the defendant's conduct has been extreme and outrageous. It
> has not been enough that the defendant has acted with an
> intent which is tortious or even criminal, or that he has
> intended to inflict emotional distress, or even that his conduct
> has been characterized by "malice," or a degree of
> aggravation which would entitle the plaintiff to punitive
> damages for another tort. *Liability has been found only where
> the conduct has been so outrageous, as to go beyond all
> possible bounds of decency, and to be regarded as atrocious,
> and utterly intolerable in a civilized community*. Generally,
> the case is one in which the recitation of the facts to an
> average member of the community would arouse his

6

resentment against the actor, and lead him to exclaim, "Outrageous!"

*The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.* The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. *There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam.* It is only where there is a special relation between the parties, as stated in § 48, that there may be recovery for insults not amounting to extreme outrage.

Restatement (Second) of Torts § 46 cmt. d (emphasis added and internal citation omitted).

In the present case, the plaintiffs' intentional infliction of emotional distress claim against General Sammons hinges on three separate comments concerning Ms. Odom. Specifically, the plaintiffs allege that General Sammons called Ms. Odom a "jerk," a "troublemaker," and a "bitch." While all three of these comments were derogatory and inappropriate in nature, none of them rise to the high standard of outrageousness necessary to sustain a claim for intentional infliction of emotional distress. As the Restatement makes clear, "liability . . . does not extend to mere insults, indignities . . . or other trivialities." That is what we are dealing with in this case. Accordingly, the plaintiffs have failed to state a claim for which relief can be granted for intentional infliction of emotional distress by General Sammons, and the trial court correctly dismissed this claim.

## V.

The plaintiffs next argue that General Sammons "participated in a civil conspiracy to violate [Ms. Odom's] rights provided her by the Tennessee Constitution in Art. I, § 7 and Art. I, § 8." The plaintiffs contend that they are entitled to bring such a claim

pursuant to Tenn. Const. art. I, § 17.[3] The trial court disposed of the conspiracy charge against General Sammons by noting that "Tennessee courts have continuously determined that Tenn. Const. Art. I, § 17 does not create a substantive right, only a mechanism by which a citizen may redress grievances." (Internal citation and quotation marks omitted.) The trial court concluded that "there is no implied cause of action based on violations of the Tennessee Constitution."

As noted by the trial court, this Court has previously addressed the issue of whether Tenn. Const. art. I, § 17 creates a cause of action for violations of other constitutional provisions. In *State ex re. Moncier v. Jones*, we stated that,

> [t]he trial court held that there is no private cause of action for damages based on violations of the Tennessee Constitution and accordingly dismissed the claims of violation of the Tennessee Constitution. On appeal, Mr. Moncier argues that Article [I], Section 17 grants him a cause of action against Ms. Jones for "violations of other Bill of Rights in Tennessee's constitution; violation of Tennessee statutes; violations of Tennessee rules; and violations of Tennessee established torts." *We have reviewed the cases cited by Mr. Moncier and considered his argument and decline to hold that Article [I], Section 17 creates a substantive cause of action to enforce other constitutional provisions or law.*
>
> Article I, Section 17 was before the court in *Staples v. Brown*, an action involving the contest of an election to the position of city attorney of Harriman; the initial challenge was heard by the city council, which accepted the results and dismissed the contest. The contestant's appeal to the Roane County circuit court was dismissed because the statute which vested the city council with jurisdiction to try the contest did not provide for an appeal. On appeal, our Supreme Court reversed the trial court; with respect to Article I, Section 17, the court stated:

---

[3] "That all courts shall be open; and every man, for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial, or delay. Suits may be brought against the State in such manner and in such courts as the Legislature may by law direct." Tenn. Const. art. I, § 17.

The Constitution (article [I], § 17) provides that all courts shall be open, and every man having an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law, and right and justice administered without sale, denial, or delay.

*The obvious meaning of this is that there shall be established courts proceedings according to the course of the common law, or some system of well established judicature, to which all of the citizens of the state may resort for the enforcement of rights denied, or redress of wrongs done them.*

*Staples* [*v. Brown*], 85 S.W. 254, 255 ([Tenn.] 1905). The court proceeded to discuss the appropriate court and procedure to hear the appeal of the contest and remanded the case to the circuit court for retrial on the merits. *The case stands for the proposition that the constitutional provision does not create a right but, rather, requires a mechanism by which a citizen may redress grievances.*

*State ex rel. Moncier v. Jones*, No. M2012-01429-COA-R3-CV, 2013 WL 2492648, at *6 (Tenn. Ct. App. M.S., filed June 6, 2013), *perm app. denied* (Tenn. Nov. 13, 2013) (emphasis added). We reiterate the holdings of *Staples* and *State ex rel. Moncier*. The plaintiffs are attempting to expand the language of Tenn. Const. art. I, § 17 so as to find a substantive right that simply does not exist. The trial court was correct in declining to find an implied cause of action in Tenn. Const. art. I, § 17 based on violations of the Tennessee Constitution. We agree with the trial court's conclusion that the plaintiffs have failed to state a claim for which relief can be granted for civil conspiracy against General Sammons.

## VI.

The plaintiffs have raised two additional issues: (1) whether General Sammons has absolute prosecutorial immunity and (2) whether General Sammons is individually liable. We have already affirmed the trial court's dismissal of the plaintiffs' claims against General Sammons for intentional infliction of emotional distress and civil conspiracy.

9

Accordingly, it is unnecessary to analyze the issues of prosecutorial immunity and individual liability, and those issues are pretermitted.

## VII.

The trial court's grant of Ms. Sammons' motion to dismiss is affirmed. Costs on appeal are assessed to the appellants, Lisa Lynn Odom and William Phipps. This case is remanded, pursuant to applicable law, for collection of costs assessed by the trial court.

_____
CHARLES D. SUSANO, JR., JUDGE